St. Paul, Minnesota, July, 1867.　　395

St. Peter's Church, Shakopee, v. The Board of Co. Com. for the Co. of Scott.

## St. Peter's Church, Shakopee,

*v.*

## The Board of Co. Commissioners for the County of Scott.

A parsonage owned by a church is not exempt from taxation under *subdiv.* l, *sec.* 3, *ch.* 1, *Laws* 1860, as amended in 1861.

The plaintiff, a church corporation, became seized of two lots, Nos. 9 and 10 in block 49, in Shakopee city, lying contiguous, bounded on the north by Third street, and on the west by Holmes' street in Shakopee city : on the 15th of April, 1861, and during that year, it erected thereon a dwelling house for the pastor or rector, the house of worship owned and used by it being situated on another lot in a different locality ; during the year 1862, *but at what time did not appear*, the plaintiff removed the church edifice or building to and on lots 9 and 10 ; the church was situated on and near the north end of said lots, the line dividing the lots passing through the building, which fronts westwardly, and the dwelling house was situated on the south end of said lots, and fronts westwardly, and with the messuage appurtenant thereto, occupies or covers a part of the south end of each of said lots. In 1861, and 1862, taxes were assessed on both lots ; in 1863, and 1865, taxes were levied on the "S ½ of lots 9 and 10 in block 49, Shakopee city," by that description, and not otherwise ; no taxes were assessed on any part of the lots for 1864. *Held*, on demurrer to the complaint ;

1. That under the tax law of 1860, as amended in 1861, the taxes for each year were properly assessed.

2. That the presumption is that the taxes were legally assessed, and as the complaint assails the validity of the tax, it must show that the tax is illegal.

3. That the provisions of *Sec.* 27 of the act, requiring that if part of a lot is listed, the return shall state the number of feet on the principal street on which it abuts, does not apply to the annual return required by *Sec.* 22 of the act ; and that on a return under the latter section, any description, which is sufficiently definite and certain to ascertain the premises, is good, and the description in this instance is sufficient.

4. That the lots being properly assessed at the biennial assessment, under the act, when subsequent to such biennial assessment, and prior to the annual return required by *Sec.* 22, a part of the lots become exempt, the remaining portion becomes subject to taxation, as a distinct parcel, and it is the duty of the assessor to assess and return the same in his annual return.

This is an appeal by the plaintiff from an order of the District Court for Scott County overruling a general demurrer to the complaint. The allegations of said complaint are, substantially, that the plaintiff on the 15th day of April, 1861, became seized in fee of the title of lots nine (9) and (10) in block forty nine (49) in Shakopee : that the said lots adjoin each other, side by side, and constitute a parcel of land one hundred and forty two feet by one hundred and twenty feet ; that the plaintiff erected on said premises, on the south end thereof, a dwelling house for the pastor or rector of the church (the plaintiff) and during a portion of the year 1861, and ever since, said dwelling house was occupied by such pastor or rector ; that the said house is situated on the south end of the said lots, and occupies or covers a part of the south end of each of the lots : that the plaintiff owned a church edifice situated upon another lot in Shakopee, and during the year 1862 removed and located the same upon the north end and across the rear of said two lots, and has ever since occupied the same for the uses of public religious services, and for no other purpose ; that in the year 1861, and 1862, taxes were levied and assessed upon said lots separately ; that in 1863, taxes were levied and assessed upon the south half of said lots, (being the portion upon which the dwelling house was situated) and was described on the assessment roll as " S. ½ of lots 9 and 10, in Block 49," " Shakopee City," and the premises are bounded on the west side by Holmes Street, and on the north side by Third Street ; that the taxes of 1863, being in arrears and unpaid, the said last described premises were advertised for

St. Peter's Church, Shakopee, v. The Board of Co. Com. for the Co. of Scott.

sale by the description aforesaid : that on the day appointed
for such sale, the plaintiff caused the taxes to be paid, with the
cost of advertising, claiming, insisting and protesting that the
same were illegal and void, and that the premises were not
liable to taxation ; and that such payment was made to avoid
the sale of the premises, and the cloud that would be cast
upon the title by a sale thereof; that no taxes were levied on
said last described premises for the year 1864, but for the year
1865 taxes were levied and assessed, but are in arrears and
unpaid. The relief demanded is, the recovery of the amount
so paid for taxes and costs, with interest, and that the said
levy and assessment on said portion covered by the dwelling
be set aside and vacated, and the defendants be restrained
from collecting the same.

JOHN L. MACDONALD, for Appellant.

CHATFIELD & IRWIN, for Respondent.

*By the Court*—MCMILLAN, J. The legislature of this State,
pursuant to *Art.* 9, *sec.* 3, *of the constitution,* have by general law
provided that, among other things, all houses used exclusively
for public worship, the books and furniture therein, and the
grounds attached to such building necessary for the proper
occupancy, use and enjoyment of the same, and not leased or
otherwise used with a view to profit, shall be exempt from
taxation. *Subdiv.* 1, *sec.* 3, *Ch.* 1, *laws* 1860, *and laws* 1861,
*p.* 16. As the burdens of government should be borne by
all the citizens in equal proportions, no property should be
exempt from taxation, in the absence of clear and explicit
legislation authorizing the same, and in the construction of a
law exempting property from taxation, courts will indulge no
presumption that will extend the exemption beyond the plain

requirements of the law itself. We are unable to discover, under the terms of the law, any reason why the residence of a rector, pastor, or priest of a church or congregation, should be exempt from taxation. The use of a house or building as a residence or place of abode, is an ordinary and secular use, and the fact that it is occupied for that purpose by a rector, pastor or priest, does not in law change its nature, or sanctify its use. Such a house, therefore, is not used by the church or society to which it belongs, exclusively for public worship, and the grounds attached thereto being appropriated to a different purpose, cannot be necessary for the proper occupancy, use and enjoyment of a house, used exclusively for such worship. We are therefore of opinion, that the building or house occupied as a residence by the rector, and the premises connected with it, are not exempt from taxation.

We are next to consider whether the taxes mentioned in the complaint are properly assessed. It is not disputed that the south half of the lots is attached to, and connected with, the parsonage, and the north half of the same with the church. The plaintiff became seized of the lots on the 15th of April, 1861, by deed of conveyance, and during that year erected thereon a dwelling house for the pastor or rector, the house of worship owned and used by the plaintiff being situated on another lot. Whether the conveyance was in trust for church purposes or not; whether the trust has been forfeited or not; are questions entirely immaterial on this demurrer. The question here is of actual use, and statutory exemption from taxation. Under the views we have expressed, the parsonage was not exempt, and during the year 1861, it appears that the only building on the lots was the parsonage; for this year therefore the property was taxable, and the taxes were properly assessed. The complaint avers that during the year 1862, the plaintiff removed the church edifice or

building to, and on these lots, but at what time does not appear. It is required by law that the taxes be assessed prior to the first Monday in August; whether the removal took place before this time or not, is not shown; the taxes may have been assessed prior to the removal of the building, and the presumption is that they were properly assessed. As the complaint attacks the validity of the tax, it is incumbent on the plaintiff to show that the tax is illegal, and not having done so, the complaint is defective. *O'Kane vs. Treat, et al.*, 25 *Ill.*, 557. The complaint further alleges, that the taxes for 1863, and 1865, respectively, were levied upon the " S. 1-2 of lots 9 and 10, in block 49," "Shakopee City," described upon the assessment and tax rolls in that manner, and not otherwise. During these years as appears from the complaint, the church edifice was situate on and near the north end of said lots, the line dividing the lots passing through the building, which fronts westwardly, and the dwelling house was situated on the south end of said lots, and fronts westwardly, and with the messuage appurtenant thereto, occupies or covers a part of the south end of each of said lots. It also appears that the premises are bounded on the west by Holmes street, and on the north by Third street, in Shakopee city. It is urged by the appellant's counsel, that the description of the premises in the assessment roll is defective, in not stating the number of feet on the principal street, on which the premises abut, and the taxes for 1863 and 1865, are therefore void. The act of 1860, as amended in 1861, was in operation at the time these taxes were assessed, and must govern us in determining their validity. By this act the *general* assessment of real estate is to be made biennially, and the first assessment under the act was made in 1860. By section 29 of the act, the county auditor is required as soon as practicable after the 1st of May, 1860, and biennially there-

after, to make out and deliver to the assessor of each township, incorporated town, ward, or city in his county, an assessment roll compiled from the books in his office, containing a description of each tract and lot of real property situate within such township, incorporated town, ward, or city, with the name of the owner thereof, if known, with the number of acres or quantity of land contained therein, as the same shall appear in his books, and also a map of each township and town within such district, with such plat books as may be necessary to enable the assessor to make a correct plat of each section, survey and tract, in his district. *Laws* 1860, *p.* 26, and *L.* 1861, *p.* 21–2. By *sec.* 27, the assessor is required on or before the 1st Monday in August, 1860, and every second year thereafter, to make out and deliver to the county auditor, a return in tabular form, in a book to be furnished him by the Auditor, of the amount, description and value, of real property subject to be listed for taxation in his district, which return shall contain, among other things, the description of each lot and the value thereof as determined by the assessor, and such description shall designate the town, and the number of the lot, and the part thereof, and if part of a lot is listed, it shall state the number of feet on the principal street on which it abuts. This is the provision with reference to the biennial lists. But *Sec.* 22 of the act provides that each assessor shall *annually*, at the time of making a list of the *personal* property, also take a list of all *real* property situate in his township that shall have become subject to taxation since the last previous listing of property therein, with the value thereof, * * * and make return, &c.; but this section makes no provision as to the specific form of this return. *L.* 1860, *p.* 23, *sec.* 22. By *Sec.* 31 of the act, the County Auditor is authorized, if from a careful examination of the Assessor's return he shall discover that any tract of land, or town lot, or

St. Peter's Church, Shakopee, v. The Board of Co. Com. for the Co. of Scott.

part of either, has been omitted in the return of the Assessor, to add the same to his list of real property, with the name of the owner, and notify the Assessor, who is to ascertain and return the value of it, or in case of his inability or neglect, the Auditor may ascertain such value, and add the same to the list, but no particular mode of description is specified. *Sec.* 31, *L.* 1860, *p.* 27. And by *sec.* 33 the county Auditor is authorized to correct, from time to time, any error in the name of the owner, in the valuation, description or quantity of any tract or lot contained in the list of real property ; and *Sec.* 37 provides for the equalization of the value by the county board of equalization. *L.* 1860, *p.* 288. The first biennial assessment of these lots, after the plaintiff became seized of them, would be in 1862 ; at that time both entire lots were taxed, and so far as appears from the complaint, were properly taxable. No general assessment was made either in 1863 or 1865. The lots being on the general assessment list in 1862, would remain there, at least, till the next biennial assessment in 1864, unless changed by a correction of the list, by the Auditor ; and since it appears that in the interim the north half of the lots had become exempt from taxation by the removal of the church building on to it, it follows that the remaining portion, to wit, the south half of the lots, *as a distinct parcel,* became subject to taxation. This having transpired subsequent to the biennial assessment, as we must presume, and prior to the assessment of 1863, it became the duty of the Assessor to assess and return the same in his annual return, as required by *Sec.* 22 above cited. The presumption is that he discharged his duty, and that the Auditor under *Sec.* 33 corrected his list so as to subject this portion of the lots to taxation. And for myself, I am inclined to think that under *Sec.* 28 *of Ch.* 1, *L.* 1860, *p.* 25, the assessor was also required to return the north half of these

lots as exempt from taxation, assessing the value thereof, and the Auditor under *Sec. 33* above cited, corrected his list from both these returns, by taxing the south half as a separate parcel, and exempting the north half from taxation. At the general assessment of 1864, no portion of the lots were assessed, for what reason does not appear, but as the S. 1-2 of the lots in the occupancy of the rector as a parsonage was taxable, the omission of this portion, we presume, was discovered by the Auditor, and the list corrected by him by inserting the same in the list for 1865, under *sec. 31* of the act.

In neither of these instances, we think, does the provision with reference to the description in the biennial return by the Assessor, whatever may be its effect with reference to *that* return, apply to the County Auditor, or to the annual return of the Assessor, but the sufficiency of the description, under such circumstances, must be determined by the general principle of law applicable thereto. In the absence of specific provision affecting the question, any description which is sufficiently definite and certain to ascertain the premises is good; in this case the town consists of lots, and blocks, and the description points out the lot, and block, by the numbers thereof respectively, and the premises assessed as the south half of the lot; this we think is a sufficient description. We are, therefore, of opinion that the taxes for both years are valid. It is unnecessary, therefore, to consider whether if the taxes, or any portion of them had been invalid, the payment of them by the plaintiff, when the premises were about to be sold, would have been a voluntary payment in law. The complaint does not state facts sufficient to constitute a cause of action, and the demurrer should have been sustained.

The order overruling the demurrer is reversed.