PEOPLE, PLAINTIFF AND APPELLEE, v. COLBERG, DEFENDANT
AND APPELLANT.

Appeal from the District Court of Mayagüez in an Action
for Slander.

No. 1048.—Decided December 21, 1916.

SLANDER — INFORMATION — MOTION FOR PARTICULARS — DEFENSE.—Ordinarily, an
information in a prosecution for slander is sufficient if it shows the time
when and the place where the words were spoken, and a motion to make
the information more specific by alleging what kind of a meeting or act
was taking place and what was the object of the same, is properly overruled
when the motion is not supported by affidavit and there is no showing that
the granting of the motion is necessary for a proper defense.

ID.—IMPUTATION OF CRIME.—The rule to be deduced from the decisions is that
when the words spoken are fairly susceptible of being understood to impute
a crime by an ordinarily intelligent bystander, the defendant is guilty of
having uttered a slander, and the principle which governs the rule is the
same in civil and criminal cases.

ID.—ID.—INNUENDO—QUESTION OF FACT.—When the words imputing a crime
are unambiguous the court should declare them libelous *per se*, but when
such words are ambiguous an innuendo may be necessary, leaving the ques-
tion of fact as to whether they were so understood to the judge or jury;
and even when the words are apparently unambiguous, the defendant may
prove at the trial that he used them innocently.

ID.—GOVERNOR—BRIBERY.—In this case the first count of the information alleges
that the defendant said: "That good-for-nothing Governor Yager in the
recent strike sold himself to capital." *Held:* That these words, standing by
themselves, in the intendment of an ordinary person, would reasonably be
understood as imputing to Governor Yager the crime of having received
some benefit, advantage, or promise, as the crime of bribery is defined in
the Penal Code, and hence making the defendant guilty of the offense set
forth in the first section of the Act of March 9, 1911.

ID.—ID.—POLICE—ASSAULT AND BATTERY—PARTICEPS CRIMINIS.—In the second
count the words of the first are repeated and the following added: "* * *
and authorized the police to commit abuses and to club the unfortunate
strikers." *Held:* That the said words added another charge of crime—
that of assault and battery. Under section 7 of the Police Laws, the head
of the police is the Governor; therefore, if he authorized the police to com-
mit the abuses ascribed to him he was *particeps criminis* in the commission
of the offense and that is a misdemeanor.

ID.—PLEADING—INFORMATION—DEMURRER—INNUENDO.—When, as in this case,
a general demurrer is pleaded to an information containing two counts and
the first count is good, the accused is not injured by the overruling of the
demurrer although the innuendo of the second was somewhat imperfect.

ID.—JURISDICTION.—The district courts have original jurisdiction of misdemean-
ors as well as of felonies.

The facts are stated in the opinion.

*Messrs. Abraham Peña* and *Felíu & Alemañy* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendant-appellant was found guilty of slander and sentenced to three months in jail. The information contained two counts, but the judgment is general and there is no indication that the defendant was acquitted on either count.

The first error of which the appellant complains is the overruling of a motion to make the information more specific. A little farther on in the opinion we shall set out the said information verbatim. It charges that the words were spoken in a certain definite place and the idea of the appellant was that the information should express what kind of meeting or act was taking place and what was the object of the meeting, and that the appellant needed these facts to defend properly the prosecution. The motion was in the nature of an application for a bill of particulars, but it was not supported by any affidavit or reference to the information which would make the granting of a bill of particulars at all imperative. An information, ordinarily, is enough in a prosecution for slander if it shows the time and the place in which the words were pronounced. In the absence of a better showing on the part of the defendant, there was no error or abuse of discretion in overruling the motion. The trial, moreover, revealed the fact that the defendant was and always had been well apprised of the nature and class of meeting to which the information referred.

The motion being overruled, the defendant presented a demurrer on three grounds: (1) The absence of facts to constitute a crime; (2) ambiguity in that the information failed to reveal whether the slander was uttered of Arthur Yager in his official capacity or as a private citizen; (3) that the court below had not original jurisdiction of the case.

The information was as follows:

"The *fiscal* presents an information against Félix Colberg for the crime of slander committed in the following manner:

"The said defendant, Félix Colberg, on the night of the tenth of January, 1916, in the plaza of the city of Añasco, P. R., in the Judicial District of Mayagüez, P. R., maliciously, voluntarily, falsely and with the criminal intention of causing dishonor, discredit, and contempt, or of imputing to the honorable Governor of Porto Rico, Arthur Yager, the commission of deeds constituting a crime, said orally and publicly and in a meeting which took place on said night on the said plaza of the said city and against the reputation of the honorable Governor, Arthur Yager, 'That good-for-nothing Governor Yager in the recent strike sold himself to capital,' thus imputing to Governor Yager the crime of bribery (*soborno,* meaning the giving or taking of a bribe).

"And the *fiscal* further alleges that the said defendant, Félix Colberg, in the early part of the night of January 10, 1916, and on the plaza of the city of Añasco, Judicial District of Mayagüez, on the occasion of a meeting which took place on said plaza, maliciously, voluntarily, falsely and with the criminal intention of dishonoring, discrediting and bringing Arthur Yager, Governor of Porto Rico, into contempt, orally and publicly imputed to him the deeds constituting a crime, saying: 'That good-for-nothing Governor Yager in the recent strike sold himself to capital and authorized the police to commit abuses and to club the unfortunate strikers; exploiter of the people of Porto Rico, a man who went to the United States before the agricultural strike began, fearful of being removed from the position he holds, leaving Travieso in charge of the Island, a child who does not know what he is dealing with and who like Mr. Yager lets himself be controlled by capital, permitting the country to be exploited by the good-for-nothings and exploiting despots.'"

Sections 1, 2 and 3 of the Act to define and punish slander, approved March 9, 1911, are as follows:

"Section 1.—Slander is a false and malicious utterance made by word of mouth in a public manner against a natural person or a body corporate, whereby said natural person or body corporate is charged with the commission of a deed punishable by law.

"Section 2.—Slander is also a tale or report maliciously and publicly made tending to injure the honor, reputation or worthiness of a natural person or body corporate.

"Section 3.—Any slanderous statement made publicly, whether in the presence of the injured person or in his absence, shall be presumed to be malicious and shall constitute the crime of slander."

The *fiscal* of this court maintained that the words uttered constitute a crime under section 1 of said Act of March 9, 1911, inasmuch as they charged a crime against Arthur Yager, but at the end of his brief he also maintained that the second section would be applicable. Now, while it is true that some of the words in either count may be considered as a "tale" or "report" under section 2, as discussed and defined in the case of *The People* v. *Garcia,* 21 P. R. R. 157, yet we do not think that the information is subject to this latter interpretation. The said pleading does not purport to use any of the words of section 2, it being entirely different to say that words spoken by a man tended to injure the honor, reputation, or worthiness of another person, as the statute provides, and that he had the intention of so injuring the honor, reputation, or worthiness. In an information where the words, somewhat as here, might be *susceptible* of being considered as tending to injure the honor, reputation, or worthiness of a person, we might not insist that the Government follow the words of the law too closely; but that in this case the Government elected to proceed under section 1 and not under section 2, is plainly indicated by an inspection of both counts of the information. Each of them charges the defendant with having used words constituting or charging a crime or crimes on the part of the said Arthur Yager. The theory of the whole information tends to make out a crime charged by the first section of that law, and the defendant was not apprised of any intention to prosecute him under section 2 of the said law. We think, however, that the words used in the first count do charge a crime.

The ruling to be deduced from the decisions is that where the words used by a defendant are fairly susceptible in the hearing of an ordinarily intelligent bystander of being understood to impute a crime, the defendant is guilty of having

uttered a slander. Newell on Libel and Slander, p. 304, par. 27, also pages 290 *et seq.*, pars. 1, 2 *et seq.; Hankinson* v. *Bilby,* 16 M. and W. 442; *Thompson* v. *Lewiston Daily Sun Pub. Co.,* 39 Atl. 556; *Campbell* v. *Campbell,* 11 N. W. 456, an excellent case reviewing authorities; *Zeliff* v. *Jennings,* 61 Tex. 458; *Boehmer* v. *Detroit Free Press Co.,* 94 Mich. 7; *Seller* v. *Jenkins,* 97 Ind. 430; *Ayres* v. *Toulmin,* 74 Mich. 44; *Goodrich* v. *Hooper,* 93 A. D. 89; and see note to *Nichols* v. *Daily Reporter Co.,* 116 A. S. R. 807. The principle that governs the rule is the same in civil and criminal cases. *People* v. *Garcia,* 21 P. R. R. 155.

If the words are unambiguous it is the duty of the court to declare them libelous *per se. Blagg* v. *Sturt,* 10 Q. B. 907, English Ruling Case Law, vol. 9, p. 123, and the cases in the notes on page 127. The authorities here quoted and some of those cited on the principal proposition show that where the words are ambiguous an innuendo may be necessary and the question left to the jury or judge, as the case may be, to decide whether they were so understood. Indeed, even if the words were apparently unambiguous the authorities show that the defendant may prove at the trial that he used them innocently. *Palou* v. *Ríos,* 23 P. R. R. 337, 341. See also *McCarty* v. *Barrett,* 12 Minn. 398, where the word "rob" was shown at the trial to have a non-criminal (innocent) meaning and was so understood.

The essential words of the first count were: "That good-for-nothing Governor Yager in the recent strike sold him self to capital." We think these words, standing by themselves in the intendment of an *ordinary* person, would reasonably be understood as imputing to Governor Yager the crime of having received some benefit, advantage, or promise, as the crime of bribery is defined in various sections of the Penal Code, and hence making the defendant guilty of the offense set forth in the first section of the Act of March 9, 1911.

The appellant maintains that the word "capital" is a

generality, like "wealth," and has no personification or material meaning. When a man says that somebody sold himself to capital, everyone will instantly understand by these words "capitalists"; and when reference is made to a past strike, to the particular alleged capitalists or employers whose men were striking. In *Boehmer* v. *Detroit Free Press Co.*, *supra*, it was said that a franchise had been obtained by the use of "boodle," and it was held that the crime of bribery had been charged. *Van Ingen* v. *Star Co.*, I Appl. Div. 429, was a case where the words used were "buying votes," and there was no doubt that the words were meant in the sense of buying voters. Even if the words should be considered as ambiguous, they were actually explained by an innuendo saying that the defendant intended to charge the crime of bribery (*soborno*); and with this explanation the question whether the words did or did not impute the crime was a matter of fact at the trial, just as it is a matter of fact at the trial, under the authorities cited, whether the words used did, in point of fact, have the meaning naturally ascribed to them.

The second count repeats the words of the first count and enlarges upon them. We think it also added another charge of crime, inasmuch as Arthur Yager, Governor of Porto Rico, is said to have authorized policemen to commit crimes of assault and battery. Under section 7 of the Police Laws the head of the police in Porto Rico is the Governor himself, and hence if he authorized the police to commit the abuses ascribed to him, he was *particeps criminis* in the commission of the offense of beating up strikers, which is a misdemeanor by virtue of the laws relating to assault and battery of 1904. If the words of the second count were ambiguous, there was also an imperfect innuendo therein, saying that the words used charged crimes against the Governor of Porto Rico. If that innuendo was somewhat imperfect, supposing the count to be ambiguous, the defendant might have had it made more specific by a direct request for that

purpose. In any event, if any doubt should remain about the sufficiency of the second count, we think the defendant suffered no prejudice by the overruling of the general demurrer, which was directed to the information as a whole, and as we have indicated, the first count was good.

We think it made no difference whether the words of the information were directed to Arthur Yager in his private capacity or in his official capacity. We see no ambiguity and the brief of appellant only touches this point to question the failure to mention that Arthur Yager was Governor at the time of the slander.

The case of The People v. Adorno, 17 P. R. R. 1059, decides that the district court has jurisdiction of misdemeanors as well as of felonies.

The case went to trial and there was evidence tending to show that the defendant used the words ascribed to him, his only defense being a denial of the exact words and alleging that he used more innocent ones. This issue was found against him and we find no partiality, passion, or prejudice. If a slight doubt should arise as to whether the words used had the meaning ascribed to them, the second witness, Francisco González, gave evidence tending to show that the words used were that the Governor sold himself in order to permit the police to abuse the strikers. There is nothing to show that the words were used in an innocent sense and the court was justified in finding the defendant guilty.

The defendant made another motion, to file away the information for various defects, in part a repetition of matters we have already considered and in part of matters which should have been alleged before the trial, and we find no error.

The appellant also asked that if the court should sustain the judgment, the penalty of three months be modified. If normal conditions and the absence of excitement due to the stimulation of bad advice be assumed, we agree with the appellant that workingmen in Porto Rico are respectful, obedient, and followers of the law and, generally, they are not

violent. Heretofore, we have placed ourselves squarely on record as standing for the greatest possible freedom of speech in this Island, but a line must be drawn somewhere, and labor leaders, not being above the law, must learn like the rest of us to distinguish. So long as they keep within the limits of the doctrine announced by this court they will receive full protection in the exercise of their legal rights; but if they elect to abuse the privileges they now enjoy; undertake to ride roughshod over the equally sacred rights of others, and, through the misstatement of facts and malicious defamation of character, deliberately seek to inflame the hearts and minds of the working people, not only against their employers, but also against the necessary agents for the enforcement of law and order in this Island, then the maximum punishment prescribed for the crime of slander seems extremely mild, and in such circumstances we cannot agree that three months in jail is an excessive sentence.

The judgment of the court below should be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.