EL PUEBLO, DEMANDANTE Y APELADO, *v.* COLBERG, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez,
en causa por delito de calumnia.

No. 1048.—Resuelto en diciembre 21, 1916.

CALUMNIA—ACUSACIÓN—MOCIÓN PARA· QUE SE HAGA MÁS ESPECÍFICA LA ACUSA-
CIÓN—DEFENSA.—Generalmente es suficiente una acusación por delito de ca-
lumnia si en ella se alega la fecha y lugar en que se pronunciaron las palabras;
y procede que se desestime una moción en que se solicita que se haga más
específica la acusación alegándose qué clase de mitin o acto se llevaba a cabo
y cuál era su objeto, cuando dicha moción no está sostenida por *affidavits,*
ni se demuestra que su concesión es necesaria para una debida defensa.

ID.—INTERPRETACIÓN DE LAS PALABRAS PRONUNCIADAS.—Cuando las palabras usa-
das por un acusado son, al ser oídas por un circunstante de entendimiento
ordinario, razonablemente susceptibles de ser interpretadas en sentido de que
imputan un delito, el acusado es culpable de haber proferido una calumnia;
siendo el principio que gobierna esta regla aplicable lo mismo a casos civiles
que criminales.

ID.—EXPLICACIÓN DEL SIGNIFICADO DE LAS PALABRAS (INNUENDO)—CUESTIÓN DE
HECHO.—Si las palabras que imputan un delito no son ambiguas, es el deber
de la corte declararlas libelosas *per se;* pero cuando tales palabras son ambi-
guas, una explicación de su significado difamatorio (*innuendo*) puede hacerse
necesaria, dejando al juez, como cuestión de hecho, el estimar si ellas fueron
así entendidas, pudiendo sin embargo probar el acusado en el juicio, cuando
las palabras son aparentemente inequívocas, que las usó inocentemente.

ID.—GOBERNADOR—POLICÍA INSULAR—SOBORNO.—En este caso las palabras esen-
ciales imputadas en el primer cargo fueron: ''El manganzón del Gobernador
Yager en la huelga pasada se vendió con el capital.'' *Se resolvió:* que esas
palabras, por sí solas, y para el entendimiento de cualquier persona serían
razonablemente interpretadas en el sentido de que imputan al Gobernador
Yager el delito de haber recibido algún beneficio, provecho u ofrecimiento,
como se define el delito de soborno en el Código Penal, y por tanto hacen
culpable al acusado del delito de calumnia previsto en· el artículo 1°. de la
ley de marzo 9, 1911.

ID.—ID.—ACOMETIMIENTO Y AGRESIÓN—PARTÍCIPES EN EL DELITO.—En el segundo
cargo se repiten las palabras del primero y se añade: ''y autorizó a la policía
a cometer abusos y macanear a los infelices trabajadores  *  *  *.''  ·*Se
decidió:* que dichas palabras también imputan un delito adicional de acometi-
miento y agresión.  De acuerdo con la sección 7 de la Ley de la Policía In-
sular, el Gobernador es el Jefe del Cuerpo, y por consiguiente, si autorizó· a
la policía a cometer los abusos que se atribuyen fué un *particeps criminis* en
la comisión del delito, lo que constituye un *misdemeanor.*

ID.—CARGOS DISTINTOS—EXCEPCIÓN PERENTORIA GENERAL.—Cuando como en este
caso, contra una acusación que contiene dos cargos se dirige una excepción
perentoria general, y el primer cargo es suficiente, el acusado no sufre per-
juicio en la desestimación de la excepción, aun cuando el *innuendo* del segundo
cargo fuera algo imperfecto.

Id.—Cortes de Distrito—Jurisdicción—Misdemeanor.—Las Cortes de Distrito tienen jurisdicción original tanto en casos de *felony* como de *misdemeanor*.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Abraham Peña y Felíu & Alemañy.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

El acusado y apelante fué declarado culpable del delito de calumnia y condenado a sufrir tres meses de cárcel. La acusación contenía dos cargos, pero la sentencia es general y no existe nada que indique que el acusado fué absuelto en ninguno de los cargos.

El primer error de que se queja el apelante es el haber denegado la corte una moción para que se hiciera más específica la acusación. Un poco más adelante en esta opinión citaremos literalmente la referida acusación. Se alega en ella que las palabras fueron pronunciadas en cierto determinado lugar y la idea del apelante era la de que la acusación debía expresar qué clase de mitin o acto se llevaba a cabo, y con qué objeto se celebraba dicho mitin, y que el apelante necesitaba estos hechos para defenderse debidamente de la acusación. La moción fué a manera de una petición interesando que se especifiquen los hechos de la acusación (*bill of particulars*), pero no estaba sostenida por ningún *affidavit* o referencia a la acusación que de algún modo hiciera obligatoria la concesión de un *bill of particulars*. Generalmente una acusación es suficiente en una causa por calumnia, si en ella se alega la fecha y el lugar en que las palabras fueron pronunciadas. A falta de mejor alegación por parte del acusado no hubo error o abuso de discreción al denegar la moción. El juicio reveló además el hecho de que el acusado estaba y siempre había estado bien informado de la naturaleza y clase de mitin a que se refería la acusación.

Habiéndose desestimado la moción, el acusado formuló excepción basada en tres razones: (1) Que los hechos alegados y expuestos en dicha acusación no son constitutivos de delito alguno; (2) que la acusación es ambigua, por

cuanto en ella no se expresa si la imputación hecha por el acusado se hizo a Arthur Yager, en su carácter oficial, o en su carácter individual; (3) que la corte inferior no tenía jurisdicción originaria para conocer del caso.

La acusación fué la siguiente:

"El Fiscal formula acusación contra Félix Colberg, por un delito de calumnia, *misdemeanor,* cometida dicha infracción en la forma siguiente:

"El citado acusado Félix Colberg, allá en las primeras horas de la noche del día 10 de enero de 1916 y en la plaza del pueblo de Añasco, P. R., territorio de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R., maliciosa, voluntaria, falsamente y con la intención criminal de causar deshonra, descrédito y menosprecio, o imputar al Hon. Gobernador de Puerto Rico, Arthur Yager, la comisión de hechos constitutivos de delito dijo de palabra y públicamente, y en un mitin que se celebraba en dicha noche en la ya citada plaza del pueblo de Añasco, y en contra de la reputación del Hon. Gobernador Arthur Yager, 'el manganzón Gobernador Yager en la huelga pasada se vendió con el capital,' e imputando así al Hon. Gobernador Yager, un delito de soborno.

"Y el Fiscal además alega que:

"El citado acusado Félix Colberg, allá en las primeras horas de la noche del día 10 de enero de 1916, y en la plaza pública del pueblo de Añasco, P. R., territorio de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R., y con motivo de un mitin que se celebraba en dicha plaza, maliciosa, voluntaria, falsamente y con la intención criminal de deshonrar, desacreditar y menospreciar al Hon. Gobernador de Puerto Rico, Arthur Yager, le imputó de palabra y públicamente, la comisión de hechos constitutivos de delito, diciendo: 'El manganzón Gobernador Yager, en la huelga pasada se vendió con el capital y autorizó a la policía a cometer abusos y macanear a los infelices trabajadores; explotador del pueblo de Puerto Rico, que se fué para los Estados Unidos antes que empezara la huelga agrícola, temeroso a ser raspado del cargo que desempeña; dejando a Travieso encargado de la isla, chiquillo que no sabe lo que tiene entre manos, y que también como Mr. Yager, se deja manejar por el capital, permitiendo que el país sea explotado por los manganzones y déspotas explotadores.''

Los artículos 1, 2 y 3 de la ley para definir y castigar el

delito de calumnia, aprobada en 9 de marzo de 1911, son los siguientes:

"Artículo 1.—Se entiende por calumnia, toda falsa y maliciosa imputación hecha de palabra y públicamente contra otra persona natural o jurídica, imputándole la comisión de hecho constitutivo de delito.

"Artículo 2.—Entiéndese también por calumnia toda palabra o concepto proferido maliciosa y públicamente en deshonra, descrédito, menosprecio de otra persona natural o jurídica.

"Artículo 3.—Se presumirá maliciosa y será calumnia procesable toda expresión calumniosa hecha públicamente en presencia o en ausencia de la persona agraviada."

El Fiscal de este tribunal sostuvo que las palabras pronunciadas constituyen un delito de acuerdo con el artículo 1 de dicha ley de marzo 9, 1911, puesto que en ellas se imputaba un delito al Gobernador Yager, pero al final de su alegato también sostuvo que el artículo 2 sería de aplicación. Ahora bien, aunque es verdad que algunas de las palabras de cualquiera de los cargos pueden ser consideradas como un "relato" o "informe proferido" de acuerdo con el artículo 2, como se ha discutido y definido en el caso de *El Pueblo v. García,* 21 D. P. R. 163, no creemos, sin embargo, que la acusación está sujeta a esta última interpretación. Dicha alegación no tiene por objeto emplear ninguna de las palabras del artículo 2, siendo enteramente distinto el decir que las palabras pronunciadas por un hombre lo fueron en deshonra, descrédito o menosprecio de otra persona, como prescribe el estatuto, y que tuvo él la intención de causar de tal modo deshonra, descrédito o menosprecio. En una acusación en que las palabras, algo parecidas a las de este caso pudieran ser *susceptibles* de ser consideradas en deshonra, descrédito o menosprecio de una persona, no debiéramos insistir en el hecho de que el Gobierno se ajustó a las palabras de la ley con demasiado rigor; pero que en este caso el Gobierno eligió proceder de conformidad con el artículo 1 y no con el artículo 2, aparece claramente indicado de un examen de ambos de los cargos contenidos en la acusación. En cada

uno de ellos se denuncia al acusado por haber proferido palabras que constituyen o imputan la comisión de un delito o delitos por parte del referido Arthur Yager.   La teoría de toda la acusación tiende a establecer un delito prescrito en el primer artículo de esa ley, y el acusado no tuvo conocimiento de que hubiera la intención de acusarlo de acuerdo con el artículo 2 de la referida ley.   Creemos, sin embargo, que las palabras usadas en el primer cargo imputan un delito.

La regla que ha de deducirse de las decisiones es la de que cuando las palabras empleadas por un acusado son susceptibles razonablemente al oirlas un circunstante de entendimiento ordinario, de ser interpretadas en el sentido de que imputan un delito, el acusado es culpable de haber proferido una calumnia.   Newell, sobre Libelo y Calumnia, página 304, párrafo 27, y asimismo las páginas 290 y siguientes, párrafos 1, 2 y siguientes; *Hankinson* v. *Bilby,* 16 M. y W. 442; *Thompson* v. *Lewiston Daily Sun Publishing Co.,* 39 Atl. 556; *Campbell* v. *Campbell,* 11 N. W. 456, un caso excelente en que se revisan las autoridades: *Zeliff* v. *Jennings,* 61 Texas 458; *Boehmer* v. *Detroit Free Press Co.,* 49 Mich. 7; *Seller* v. *Jenkins,* 97 Ind. 430; *Ayers* v. *Toulmin,* 74 Mich. 44; *Goodrich* v. *Hooper,* 93 A. D. 49.   Véase la nota al caso de *Nichols* v. *Daily Reporter Co.,* 116 A. S. R. 807.   El principio que informa la regla es el mismo en casos civiles que en criminales.   *El Pueblo* v. *García,* 21 D. P. R. 163.

Si no son ambiguas las palabras, es el deber de la corte declarar que son libelosas *per se.   Blagg* v. *Sturt,* 10 Q. B. 907.   English Ruling Case Law, tomo 9, página 123, y los casos en las notas, página 127.   Las autoridades aquí citadas y algunas de las citadas sobre la primera proposición, demuestran que cuando las palabras son ambiguas puede ser necesario el alegar la significación difamatoria de las palabras (*innuendo*) y dejar la cuestión al jurado o juez, según sea el caso, para que resuelva si fueron entendidas de tal modo:   En verdad que aun cuando las palabras aparentemente no son ambiguas, las autoridades sostienen que el acu-

sado puede probar en el juicio que las empleó inocentemente. *Palou* v. *Ríos,* 23 D. P. R. 363. Véase también el caso de *McCarty* v. *Barrett,* 12 Minn. 398, en el que se demostró en el juicio que la palabra "robar" no fué usada en su acepción criminal y así fué entendida.

Las palabras esenciales del primer cargo fueron "El manganzón Gobernador Yager en la huelga pasada se vendió con el capital." Creemos que estas palabras por sí solas y para el entendimiento de cualquier persona serían razonablemente interpretadas en el sentido de que imputan al Gobernador Yager el delito de haber recibido algún beneficio, provecho u ofrecimiento, como se define el delito de soborno en varios artículos del Código Penal, y, por tanto, hacen culpable al acusado del delito previsto en el artículo 1°. de la Ley de marzo 9, 1911.

El apelante alega que la palabra "capital" es una palabra genérica que equivale a "riqueza" y no tiene personificación o significación material. Cuando un hombre dice que alguien se vendió con el capital, todo el mundo entenderá inmediatamente con esas palabras que se habla de los "capitalistas"; y si se hace referencia a una huelga pasada, a los supuestos capitalistas o patronos en particular cuyos empleados estaban en huelga. En el caso de *Boehmer* v. *Detroit Free Press Co., supra,* se dijo que había sido obtenida una franquicia por medio de dinero, *"boodle,"* y se resolvió que había sido imputado un delito de soborno. *Van Ingen* v. *The Star Co.,* I N. Y. App. Division, 429, fué un caso en el cual las palabras usadas eran "comprando votos" y no hubo duda de que la significación que quiso dársele a las mismas era la de comprando votantes. Aun cuando se considere que las palabras son ambiguas, su significado difamatorio *(innuendo)* quedó ciertamente explicado con decir que el acusado tuvo la intención de imputar el delito de soborno, y con esta explicación la cuestión de si con dichas palabras se imputó o no un delito, era una cuestión de hecho en el juicio, como es una cuestión de hecho en el juicio, de

acuerdo con las autoridades citadas, si las palabras usadas
en realidad de verdad tenían la significación que natural-
mente se les da.

En el segundo cargo se repiten las palabras del primero
y se amplían. Creemos que también imputaban un delito
adicional, puesto que se dice que Arthur Yager, Gobernador
de Puerto Rico, autorizó a la policía a cometer delitos de
acometimiento y agresión. De acuerdo con la sección 7 de
la Ley de la Policía Insular, el jefe de la policía en Puerto
Rico es el Gobernador mismo, y por consiguiente si autorizó
a la policía a cometer los abusos que a él se le atribuyen, fué
un *partíceps criminis* en la comisión del delito de macanear
a los huelguistas, lo que constituye un *misdemeanor* según
lo preceptúan las leyes relativas al acometimiento y agresión
aprobadas en 1904. Si las palabras del segundo cargo fue-
ron ambiguas, en dicho cargo también hubo una explicación
imperfecta de su significación difamatoria (*innuendo*), al
decir que las palabras usadas imputaban delitos contra el
Gobernador de Puerto Rico. Si ese *innuendo* fué algo imper-
fecto, suponiendo que el cargo sea ambiguo, pudo haber pro-
curado que se hiciera más específico, por medio de una peti-
ción directa con tal objeto. De todos modos si quedara
alguna duda en cuanto a la suficiencia del segundo cargo,
creemos que el acusado no sufrió ningún perjuicio con la
desestimación de la excepción perentoria general, la cual iba
dirigida a la acusación en conjunto, y como ya hemos indi-
cado, el primer cargo era suficiente.

Creemos que no importaba si las palabras de la acusación
se dirigieron a Arthur Yager en su capacidad particular, o
en su carácter oficial. No vemos que exista ambigüedad y
en el alegato del apelante sólo se toca esta cuestión para ata-
car el punto de no haberse hecho mención de que Arthur
Yager era gobernador cuando se pronunciaron las palabras
calumniosas.

En el caso de *El Pueblo* v. *Adorno,* 17 D. P. R. 1102, se

resuelve que la corte de distrito tiene jurisdicción tanto en casos de *misdemeanors* como de *felonies.*

El caso fué llamado a juicio y hubo prueba tendente a demostrar que el acusado usó las palabras que se le atribuyen, siendo su única defensa la negativa general que hizo de que esas fueran las mismas palabras, alegando que empleó otras menos ofensivas. Esta cuestión fué resuelta en su contra, y no vemos que haya habido parcialidad, pasión o prejuicio. Si surgiera alguna ligera duda con respecto a si las palabras usadas tenían la significación que se les dió, el segundo testigo Francisco González, declaró en el sentido de mostrar que las palabras usadas fueron las de que el Gobernador se vendió para autorizar a la policía a que cometiera abusos con los huelguistas. No existe nada que demuestre que las palabras fueron usadas con un sentido inofensivo y la corte estuvo justificada en declarar culpable al acusado.

El acusado hizo otra moción para que se sobreseyera y archivara la acusación por varios defectos, la que en parte es una repetición de las cuestiones que ya hemos considerado y en parte de cuestiones que debieron haber sido alegadas antes del juicio, y no vemos que haya habido error.

El apelante también solicitó que caso de que la corte confirme la sentencia, la pena de tres meses de cárcel debe ser modificada. De suponerse que las condiciones son normales y que no existe la excitación debida al estímulo de malos consejos, convenimos con el apelante en que los trabajadores en Puerto Rico son respetuosos, obedientes y acatadores de las leyes y que por lo general no son violentos. Hasta ahora este tribunal no ha dejado de manifestarse enteramente en favor de la mayor libertad de palabra posible en esta isla, pero debe establecerse un límite en alguna parte y los jefes de trabajadores no siendo superiores a la ley tienen, como el resto de nosotros, que aprender a distinguir. En tanto en cuanto se mantengan dentro de los límites de la doctrina enunciada por este tribunal, recibirán entera protección en el ejercicio de sus derechos legales; pero si eligen abusar del

privilegio de que ahora gozan, pretenden llegar al fin que se ,proponen sobre los derechos igualmente sagrados de los demás, y por medio del relato falso de hechos y de la difamación maliciosa del carácter, tratan deliberadamente de irritar las pasiones y ánimos de los trabajadores, no sólo contra sus patronos sino también contra los funcionarios necesarios para hacer cumplir la ley y el orden en esta isla, entonces el máximum de la pena prescrita para el delito de calumnia parece sumamente benigno, y en tales circunstancias no podemos convenir en que la condena de tres meses de cárcel sea excesiva.

La sentencia de la corte inferior debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.