EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO SIERRA (*a*) LUIS DALTA, acusado y apelante. EL MISMO *v.* EL MISMO. EL MISMO v. EL MISMO.

Nos. 5235, 5236 y 5237.—*Sometidos:* Febrero 8, 1935. *Resueltos:* Marzo 19, 1935.

*C. Iriarte* y *F. Fernández Cuyar*, abogados del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se trata de tres causas criminales por libelo infamatorio seguidas contra una sola persona, Pedro Sierra (*a*) Luis Dalta, y basadas en una misma publicación, siendo las partes ofendidas, respectivamente, Miguel Guerra Mondragón, Manuel Rodríguez Serra y Carlos del Valle.

En todas se declaró culpable al acusado imponiéndosele en cada una la pena de treinta dólares de multa y en defecto de pago un día de cárcel por cada dólar dejado de satisfacer. No conforme, apeló, y si bien las tres apelaciones se han tramitado separadamente, el alegato es común y conjuntamente fueron argumentadas en el acto de la vista. Las estudiaremos, en tal virtud, en una sola opinión.

La acusación en el recurso No. 5235, dice:

"El Fiscal Especial General, Lcdo. F. G. Pérez Almiroty, formula acusación contra Pedro Sierra (*a*) Luis Dalta, por un delito de Libelo, infracción al artículo 243 del Código Penal (*Misdemeanor*) cometido somo sigue:

"El referido Pedro Sierra (*a*) Luis Dalta, allá por el día 17 de enero de 1931 y en la Municipalidad de San Juan, P. R., dentro del Distrito Judicial Municipal de San Juan, P. R., que forma parte del Distrito Judicial del mismo nombre, siendo director del periódico que semanalmente se publica en la ciudad de San Juan denominado 'El Diluvio', ilegal, voluntaria y maliciosamente permitió publicar y en efecto publicó, haciéndolo circular en la dicha Municipalidad de San Juan, un artículo bajo el epígrafe: 'El Escandaloso "Affaire" del Acueducto de Bayamón ante la Corte Suprema. Se acusa a un

Oficial Jurídico de ser Copartícipe en el caso', cuyo texto copiado íntegramente dice así:

" 'En esta semana se vió ante la Corte Suprema, presidida por los cinco jueces, el escandaloso "affaire" del acueducto de Bayamón, cuya subasta fué impugnada ante las Cortes de Justicia, por las inmoralidades cometidas en la adjudicación.

" 'En la vista de este caso, uno de los que más han desacreditado al Departamento del Interior, el abogado Coll y Cuchí, planteó las siguientes cuestiones:

" 'Primera: Que el autor del proyecto, para construir la planta de filtración de Bayamón lo fué Carlos del Valle, por lo que cobró unos crecidos honorarios.

" 'Segunda: Que este mismo ingeniero siendo autor del proyecto estipuló en el mismo que ningún ingeniero que no representara casas instaladoras de filtros podía presentarse a la subasta.

" 'Tercera: Que a pesar de ser el autor del proyecto Carlos del Valle, se presentó como licitador y obtuvo la buena pro en la subasta.

" 'Cuarta: Que Carlos del Valle es el representante de la Robberts Filter Mfg. Co. vendedora de los filtros.

" 'Quinta: Que Carlos del Valle obtuvo la subasta con una cantidad de $10,000 mayor en el costo que los demás contratistas.

" 'Sexta: Que Carlos del Valle o Del Valle & Cía. no poseían ningún récord como contratistas.

" 'Séptima: Que el único contrato de obras realizado por Carlos del Valle lo fué el riego de Guayama, cuyo resultado todos conocemos, pues no pudo terminarlo y sus fiadores se vieron expuestos a pagar $100,000 de cuya cantidad fueron exonerados por nuestra Legislatura por ser estos fiadores dos "padres de la Patria."

" 'Octava: Que a pesar de que la subasta fué impugnada y se entregó su estudio y resolución a una comisión de competentísimos ingenieros integrada por los Sres. Antonio Luchetti, Ramón Rodríguez López y Rafael M. González, del Departamento del Interior, quienes resolvieron que no debía adjudicársele la subasta a Carlos del Valle, el Comisionado Esteves, por una simple opinión del Dpto. de Justicia, emitida por el Oficial Jurídico Rodríguez Serra, adjudicó la subasta a del Valle.

" 'Novena: Quedó comprobado que el oficial jurídico Rodríguez Serra antes de ocupar este puesto fué abogado de Del Valle.

" 'Décima: Que se probó asimismo que todas las opiniones emitidas por el Departamento de Justicia, han sido redactadas por Rodríguez Serra, a favor de su antiguo cliente, Del Valle.

" 'Undécima: Que de todas estas cosas escandalosas que pugnan con el buen nombre de la Justicia en Puerto Rico, fué informada la Corte Suprema, el más alto Tribunal del país.

" 'Planteadas estas cuestiones por el abogado Coll y Cuchí con datos y cifras precisas y demostradas todas estas inmoralidades, los abogados que representan al Sr. Del Valle, Guerra Mondragón y Soldevila no refutaron estos hechos levantados, y expuestos ante la Corte; mejor dicho los aceptaron.

" 'Rodríguez Serra se levantó para aclarar "que él entendía que el abogado Coll y Cuchí no quería ofenderlo con sus acusaciones." Y no dijo nada más.

" 'Bolívar Pagán que representa al Municipio de Bayamón alegó únicamente su peregrina objeción de los treinta días que determina la ley para protestar de una subasta mal adjudicada. Argumento ya gastado e insustancial, toda vez que la adjudicación de esta subasta fué objeto de una protesta ante el Departamento del Interior, que ordenó una junta de técnicos que investigara las proposiciones.

" 'El asunto es de los más bochornosos que hemos presenciado por haber envuelta la adjudicación de una subasta a un postor insolvente regalándole $10,000 de diferencia sobre los demás postores, elementos de solvencia social y moral como fueron los Sres. Félix Benítez Rexach, Fernando Caso y Manuel L. Miró.

" 'La mejor demostración de todo este escandaloso caso es que apenas empezadas las obras y gastadas las cantidades en poder del Municipio de Bayamón, o sean los $55,000, las obras fueron paralizadas, aún cuando se nos informa que el Departamento del Interior ha hecho responsable de esta paralización a Del Valle.

" '¿Por qué están las obras paralizadas? Por la sencilla razón de que el Municipio de San Juan al conocer la adjudicación bochornosa donde se le regalaban $10,000 de los contribuyentes a Del Valle, revocó la ordenanza que le facilitaba en calidad de préstamo $35,000 a Bayamón para terminar esta obra, cuya revocación confirmó nuevamente a pesar de la opinión del Departamento de Justicia (dígase Rodríguez Serra) declarando nula la revocación de la ordenanza.

" '¿Pero es que se creen que el dinero de los contribuyentes de San Juan está a la disposición de los manejos del Municipio de Bayamón, del contratista Del Valle, de Guerra Mondragón y de Rodríguez Serra?

" 'Aguardemos el fallo final de nuestro más alto tribunal, ya que todo el país conoce la clase de pájaros que integran la Junta de Subasta del Municipio de Bayamón y su acéfalo Alcalde inclusive,

y su Asamblea Municipal que al no protestar de esta inmoralidad demuestra que está también "mojada" en este bochornoso affaire;'

"Siendo los conceptos consignados en el transcrito artículo, escritos y publicados con el propósito deliberado de difamar al Lcdo. Miguel Guerra Mondragón, abogado de profesión, en ejercicio en la ciudad de San Juan, dentro de la cual se publicó y se hizo circular ·el mencionado periódico conteniendo el artículo de referencia, tendiente todo él a exponer al expresado abogado Miguel Guerra Mondragón al odio, desprecio y ridículo públicos y desacreditarlo, menospreciarlo y deshonrarlo en su buena reputación y fama, imputándole entre otros actos, el de la comisión de un delito de Soborno, como lo demuestran los párrafos siguientes del mencionado artículo:" (Se transcriben tres de los párrafos finales del mismo.)

"Este hecho es contrario a la Ley para tál caso hecha y prevista y a la paz y dignidad de El Pueblo de Puerto Rico."

Son iguales los primeros veinte y tres párrafos de la acusación que sirve de base al proceso en que se estableció el recurso No. 5236, y se añade:

"Siendo los conceptos consignados en el transcrito artículo, escritos y publicados con el propósito deliberado de difamar al Lcdo. Manuel Rodríguez Serra, abogado de profesión, y quien en la actualidad ejerce el cargo de Segundo *Assistant* del Procurador General de Puerto Rico, en la ciudad de San Juan, dentro de la cual se publicó y se hizo circular el mencionado periódico conteniendo el artículo de referencia, tendiente todo él a exponer al expresado abogado Manuel Rodríguez Serra al odio, desprecio y ridículo públicos y desacreditarlo, menospreciarlo y deshonrarlo en su buena reputación y fama, imputándole entre otros actos, el de la comisión de un delito de Soborno, como lo demuestran los párrafos siguientes del mencionado artículo:" (Se transcriben las cuestiones 8, 9 y 10, y los párrafos penúltimo y último del artículo.)

Iguales son también los primeros veinte y tres párrafos ·de la acusación en que se funda la causa en la que se interpuso el recurso No. 5237. Luego dice:

"Siendo los conceptos consignados en el transcrito artículo, escritos y publicados con el propósito deliberado de difamar al Sr. Carlos del Valle, ingeniero en ejercicio en la ciudad de San Juan, dentro ·de la cual se publicó y se hizo circular el mencionado periódico con-

teniendo el artículo de referencia, tendiente todo él a exponer al expresado Sr. Carlos del Valle al odio, desprecio y ridículo públicos y desacreditarlo, menospreciarlo y deshonrarlo en su buena reputación y fama, imputándole entre otros actos, el de la comisión de un delito de Soborno, como lo demuestran los párrafos siguientes del mencionado artículo:" (Se transcriben las cuestiones 5, 6, 7, 8, 9 y 10, y varios de los últimos párrafos del artículo.)

En la relación del caso y opinión de la corte de distrito referente a los tres casos, el juez sentenciador, se expresó como sigue:

"Considerada la evidencia, especialmente el testimonio del Lcdo. Coll y Cuchí, el artículo en cuestión no es una imparcial y exacta relación de su informe ante el Tribunal Supremo. El Sr. Coll no manifestó allí que el dinero de los contribuyentes de San Juan estuviera a la disposición de los manejos del Municipio de Bayamón, del contratista del Valle, de Guerra Mondragón y de Rodríguez Serra; ni que los pájaros que integran la Junta de Subasta de Bayamón, su acéfalo alcalde y la asamblea municipal, al no protestar de la inmoralidad, demostrara que está también mojada en el bochornoso affaire. Tampoco dijo que Rodríguez Serra fuera el abogado de Carlos del Valle, ni que emitiera las opiniones favorables para la adjudicación de la subasta, siendo del Valle un postor insolvente, a quien se le regalaban $10,000 de los contribuyentes. No hubo evidencia de que Rodríguez Serra y Guerra Mondragón recibieran dinero alguno, y antes al contrario Coll y Cuchí declaró que nada tocaron y que jugaban el papel de víctimas entre del Valle y El Municipio de Bayamón. Tampoco hubo evidencia del recibo de dinero por del Valle, que no fuera el producto de su contrato con el Municipio. Por tanto, no es aplicable la excepción comprendida en el artículo 249 del Código Penal, con respecto a que no deberá presumirse la malicia del mero hecho de la publicación. Además se presentó evidencia de un artículo posterior publicado en el mismo periódico, en su edición de febrero 21, 1931, titulado 'Rodríguez Serra de cuerpo entero', tendiente a demostrar la malicia en aquella publicación.

"La evidencia ha demostrado además que el referido artículo objeto de las denuncias fué escrito por Bernardo Cruz, quien asistió a la vista ante la Corte Suprema en calidad de repórter y que luego el acusado consultó al abogado Coll y Cuchí, quien fué de opinión que podía publicarse en El Diluvio, por ser un periódico de crítica aguda y violenta, aunque quizás no en el editorial de La Democracia.

No debe colegirse de esto que pueda haber libelo en una publicación y no existir en otra porque sean distintas las características de uno y otro periódico y ser distinto el público que lo lee. La publicación es la misma a los fines de la ley y las palabras y conceptos no pueden tener distinta significación en uno u otro periódico.

"La explicación, aclaración o comentario del significado difamatorio de ciertas frases hecho por el periodista, cuando lo que se intenta publicar es el relato del informe judicial de un abogado, no constituye defensa en causa por libelo. Se requiere la imparcial y exacta relación de lo que tuvo lugar en el acto judicial, y aun así es procesable, de probarse que hubo maliciosa intención al relatarlo, o sea con la intención de causar un mal. Existe el privilegio para aquéllos que honestamente usan de él, no para refugio de personas libelistas o para que las honradas queden privadas de protección. Franco vs. Martínez, 29 D.P.R. 237. La publicación de procedimientos judiciales, para constituir privilegio, debe ser razonable, justa e imparcial. El Pueblo vs. Toro, 21 D.P.R. 44.

"No es necesario que la frase o concepto imputativo de delito o de acto que tienda a exponer al ridículo o menosprecio al libelado, haya sido objeto de decisión judicial. Basta con que en la forma y manera en que se hace la publicación, la misma tienda a conectar al libelado con algún hecho delictuoso o a imputarle la comisión de algo que le exponga a la vergüenza pública.

"A falta de *innuendo* en las denuncias de los casos que consideramos (El Pueblo vs. Colberg, 24 D.P.R. 673; El Pueblo vs. Aybar, 38 D.P.R. 596; El Pueblo vs. Aponte, 41 D.P.R. 315) o sea la significación libelosa de las palabras sobre manejo del 'dinero de los contribuyentes', no puede decirse ciertamente que la publicación impute un delito de soborno o corrupción dentro de las disposiciones del Título X, Capítulo 1, del Código Penal; pero sí es claro que dicha publicación expone a los señores del Valle. Guerra Mondragón y Rodríguez Serra al desprecio y ridículo público y los desacredita, menosprecia y deshonra en su buena reputación y fama, sobre las cuales declaró el Sr. Coll y Cuchí, constituyendo una infracción del artículo 243 del Código Penal, que define el delito de libelo.

"El acusado no es el autor del artículo libeloso y además se aconsejó con un abogado antes de publicarlo en su periódico, y aunque esto no le excusa de responsabilidad, puede tomarse en cuenta, según expresó el Sr. Coll en su testimonio, para mitigar la pena."

Tres errores señala y argumenta extensa y cuidadosamente en su alegato el apelante, a saber: que la corte erró al

apreciar la prueba, que erró al no aplicar el artículo 249 del Código Penal y que erró al declarar que la publicación constituye una infracción del artículo 243 del Código Penal no obstante haber declarado que no imputaba el delito de soborno o corrupción. Tras un detenido estudio de los casos en su totalidad, creemos que ninguno de los errores señalados fué cometido.

"Constituye líbelo," dice el artículo 243 del Código Penal, "cualquiera maliciosa difamación expresada por medio de escritos, impresos, signos, láminas, dibujos, u otra forma análoga, tendentes a denigrar la memoria de un difunto, o impugnar la honradez, integridad, virtud o buena fama de un vivo, o publicar sus defectos naturales o supuestos, exponiéndole así al odio, desprecio o ridículo público."

Y agrega el 245: "Se presumirá maliciosa toda publicación injuriosa, si no se probare que hubo motivo justificable para hacerla."

Aquí se admitió el hecho de la publicación y el de ser director del periódico en que se hizo el acusado. No se intentó siquiera probar la verdad de las imputaciones. Sólo se invocó el artículo 249, que prescribe: "Ningún noticiero, director o propietario de periódico podrá ser procesado por la imparcial y exacta relación de actos judiciales, legislativos, o de cualquier otro carácter oficial, o de cualquiera manifestación, discurso, argumento o debate que en ellos tuviere lugar, a no probarse que hubo maliciosa intención al relatarlos, lo cual no deberá presumirse del mero hecho de la publicación."

Como muy bien indica el apelante en su alegato la publicación comprende dos partes, una que manifiesta ser la relación de lo ocurrido en la vista de un recurso ante esta Corte Suprema y otra que contiene los comentarios del publicista.

Con respecto a esos comentarios el propio Código Penal, en su artículo 250, dispone: "Las observaciones o comentarios infamatorios relacionados con el privilegio concedido en el artículo anterior no gozarán de inmunidad por razón de estar así relacionados."

Examinada la evidencia aportada por el acusado, encuéntrase que en verdad muchas de las cuestiones que se dice en la publicación que planteó el abogado Coll y Cuchí, tienen apoyo en lo que el mismo abogado declaró que dijo y en las declaraciones de los testigos Caso y Rossy. Algunas no. Si de sólo esa parte de la publicación se tratara, nos inclinaríamos a la revocación de las sentencias recurridas, basándonos en una interpretación liberal de lo dispuesto en el artículo 249 del Código Penal.

Pero hay más, el publicista va más lejos y en el título y el comienzo del artículo y en los párrafos finales del mismo hace afirmaciones imputando a los Sres. Guerra, Rodríguez Serra y del Valle la comisión de actos que de ser ciertos demostrarían su falta de integridad y virtud. ¿Y qué base tiene para hacer afirmaciones semejantes? Sólo el informe oral del abogado de una de las partes en un recurso controvertido que se somete para ser resuelto a un tribunal de justicia. Tal base, sin más, no es suficiente. Lanzar a la publicidad como ciertas acusaciones tan graves con ese solo fundamento, no está justificado. La presunción de malicia subsiste y el delito debe entenderse cometido. La libertad de la palabra hablada o escrita no sufre llegándose a esa conclusión. Sólo se exige la responsabilidad que toda acción humana lleva consigo.

*Deben confirmarse las sentencias recurridas.*