THE FIRST CONGREGATIONAL CHURCH OF DEKALB, Appellant, *vs.* THE BOARD OF REVIEW OF DEKALB COUNTY, Appellee.

*Opinion filed April 18, 1912.*

1. TAXES—*all property is subject to taxation unless exempt by law.* All property in the State is subject to taxation unless relieved therefrom by the constitution and statutes passed in accordance therewith.

2. SAME—*tax exemption cannot be raised by judicial construction.* One claiming the benefit of a statute exempting property from taxation must clearly show that his property is within the contemplation of the law, as the statute must be strictly construed, and if there is any doubt upon the subject the doubt must be resolved against the exemption.

3. SAME—*the primary use of property determines its character.* In determining whether property falls within the terms of an exemption from taxation, whether constitutional or statutory, it is the primary use to which the property is put which must be considered, and not its secondary use.

4. SAME—*rule for determining whether property of church is exempt from taxation.* If property is devoted primarily to religious purposes, the fact that it is incidentally used for a secular purpose does not destroy the exemption from taxation under the constitution and the statute; but if the primary use is secular, the fact that there is an incidental use for religious purposes does not bring the property within such exemption.

5. SAME—*a parsonage is not exempt from taxation under the present law.* The primary use of a church parsonage is a home for the pastor, and the fact that some parts of the parsonage are used for purposes in connection with the pastor's work or the work of the church does not render the parsonage exempt from taxation under the act of 1909, which substantially follows the language of the constitution and exempts "property used exclusively for religious purposes."

FARMER, J., CARTER, C. J., and VICKERS, J., dissenting.

AUDITOR's certificate of appeal to review the decision of the board of review of DeKalb county.

CLIFFE & CLIFFE, A. G. KENNEDY, and H. W. McEWEN, (MCGOORTY & POLLOCK, of counsel,) for appellant.

W. H. STEAD, Attorney General, EDWARD M. BURST, State's Attorney, and CHARLES E. WOODWARD, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The board of review of DeKalb county held that the parsonage of the First Congregational Church of the city of DeKalb was subject to taxation, and that decision has been certified to this court for review by the Auditor of Public Accounts under the provisions of the Revenue act.

The First Congregational Church of DeKalb owns two adjoining lots in the city of DeKalb, upon one of which is located its church building and upon the other its parsonage, which latter building is occupied by the pastor and his wife and two children as a home. The pastor was called and examined before the board of review as a witness. His testimony was not contradicted, and it appears therefrom the parsonage stands about thirty feet from the church and is two stories high. On the first floor there are a hall and five rooms,—that is, a parlor, sitting room, dining room, kitchen and the pastor's study. On the second floor there are a hall and five rooms intended for sleeping rooms, and bath. The house is fitted up with the ordinary furniture and utensils for housekeeping. In the study the pastor has a desk and books and there prepares his sermons, etc., and he and his family have no other dwelling house or home in the city of DeKalb. The pastor also testified the duties of the pastor were to have entire charge of the spiritual work of the church and to have a share in the counsels and conferences by which the temporal work of the church was managed; that the officers and committees of the church and other organizations of the church meet at the parsonage; that the pastor is there consulted by people in reference to their spiritual welfare and in regard to their desire to live a godly life; that the marriage rite is solemnized there and also

the rite of baptism; that classes meet there at stated intervals for religious instruction and sometimes Sunday school is held in the parsonage; that the keys of the church and chapel are kept there, as well as decorations used on stated special occasions, and that the utensils of the communion service and the elements used in celebrating the Lord's Supper are kept and prepared in the parsonage; that the religious and educational work of the church is conducted from the parsonage; that parents of the children in the Sunday school, teachers, and others interested in the work of the church and the various societies, consult together and with the pastor at the parsonage; that two-thirds of the six days of the week are spent in the parsonage in religious work; that in the parsonage the pastor devotes his time to study, meditation and prayer and the preparation of discourses for the congregation; that the pastor's wife is also engaged in religious work in connection with the church, assisting the pastor in the preparation of the sermons, in the church work and in religious instruction, and shares with the officers of the Ladies' Aid Society, at intervals, in the work of that society; that the parsonage was acquired in order to carry on the work of the church more efficiently, by voluntary contributions from the congregation and is maintained by like contributions, and the taxes are paid by voluntary contributions raised for the purpose of church work.

Section 3 of article 9 of the constitution of 1870 authorizes the legislature to exempt from taxation, by general law, such property as may be used *exclusively for religious purposes,* and the statute in force at the time of the hearing before the board of review which exempts church property from taxes reads as follows: "All property used exclusively for religious purposes * * * and not leased or otherwise used with a view to profit," and the question to be determined upon this record is, does the constitution and the statute exempt the parsonage of appellant from taxation?

Under the act of 1872 the legislature exempted from taxation all church property actually and exclusively used for "public worship." That statute was held not broad enough to exempt from taxation a building which stood upon a lot which was separated from the church property by a sixteen-foot alley, and which was used by the church organization as a place in which to hold Sunday school and for the social purposes of the church and in which the janitor of the church had a room, on the ground that the use to which the building was put was not "public worship." (*In re Walker,* 200 Ill. 566.) The legislature amended the statute thereafter so that it exempted from taxation "all church property actually and exclusively used for public worship and all parsonages or residences actually and exclusively used by persons devoting their entire time to church work, when the said buildings and the land on which said buildings are located (said land to be of reasonable size for the location of said buildings) are owned by the congregation or the church authorities and not used for pecuniary profit." This statute was held unconstitutional in *People* v. *First Congregational Church,* 232 Ill. 158, in so far as it attempted to exempt from taxation parsonages, and the present statute was passed, which follows substantially the language of the constitution.

In determining whether the parsonage of the appellant is exempt from taxation under the statute now in force it must be borne in mind that all property in this State is subject to taxation unless it is relieved from taxation by the constitution and the statutes which are passed in accordance with the constitution, and that in determining the question whether property is exempt from taxation all statutes must be strictly construed and resolved against the exemption if there is any doubt upon the subject,—that is, the exemption is not to be made by judicial construction, and one claiming benefit under the statute is required to show clearly that the property is exempt within the contemplation of the law.

(*Montgomery* v. *Wyman,* 130 Ill. 17; *People* v. *Peoria Mercantile Library Ass'n,* 157 id. 369; *People* v. *Watseka Camp Meeting Ass'n,* 160 id. 576; *Bloomington Cemetery Ass'n* v. *People,* 170 id. 377; *Sanitary District of Chicago* v. *Martin,* 173 id. 243; *State Council of Catholic Knights* v. *Board of Review,* 198 id. 441; *People* v. *Deutsche Gemeinde,* 249 id. 132.) And in determining whether property falls within the terms of the exemption, whether it be constitutional or statutory, it is the primary use to which the property is put which must be considered and not its secondary use, (*People* v. *First Congregational Church, supra; County of Ramsey* v. *Church of Good Shepherd,* 45 Minn. 229;) and if the property is devoted, in a primary sense, to a religious purpose, the fact that it is incidentally used for secular purposes will not destroy the exemption, or if the primary use of the property is secular, the fact that a portion of it is incidentally used for a religious purpose will not make it exempt from taxation. (*People* v. *First Congregational Church, supra; County of Ramsey* v. *Church of Good Shepherd, supra.*) We think it obvious, therefore, that all would understand and readily concede that a church is a building which in its primary sense is used for a religious purpose,—that is, such use is its principal and general use, and that its occasional use as a lecture room or for other similar use would not destroy the exemption. On the contrary, we think it is equally well understood by all, as the very name signifies, that the primary use of a parsonage is as a home for the pastor and his family,—that is, that such use is its principal and general use, and that the fact that some parts of the parsonage are used for purposes connected with the pastor's work or the work of the church would not make it a building used exclusively for religious purposes and exempt it from taxation.

We think it clear, therefore, that, as was held in *People* v. *First Congregational Church, supra,* the primary purpose for which the parsonage in question was acquired and pos-

sessed by the appellant is not religious but is secular and
that it is not exempt from taxation, and that the amend-
ment of the statute after that case was decided did not
change the law in this State so as to exempt the parsonage
of the appellant from taxation. This case, in principle, dif-
fers in no way from that case, except here we have a little
more elaboration and the evidence points out perhaps more
fully the incidental uses of this parsonage than was shown
in that case. There is, however, no evidence found in this
record which shows that the primary use of the parsonage
in this case is other than that of a home provided by the
church for the pastor and his family. We think, therefore,
it is clear that the parsonage of the appellant does not fall
within the terms of the present statute which exempt church
property which is used exclusively for religious purposes.
While the statute is undoubtedly a valid enactment in so
far as it applies to church property exclusively used for
religious purposes and exempts such property from taxa-
tion, it does not apply to the parsonage in question, as that
property is not used exclusively for religious purposes with-
in the meaning of that constitutional provision.

The courts of last resort in numerous States of the
Union have had the question here presented for decision
before them, and it has very generally been held that resi-
dence property belonging to a church and used by its pastor
as a home is not exempt from taxation under constitutional
provisions similar to those in force in this State, and while
many of the constitutions of those States are not worded
precisely as is ours, the general principle of taxation an-
nounced in those constitutions is very similar to that an-
nounced in our constitution and some of the provisions
found in those constitutions are substantially identical with
ours. At least what has been said by the courts of other
States in determining this question is, while not conclusive,
very persuasive. (*St. Peter's Church* v. *Scott County*, 12

Minn. 395; *County of Hennepin* v. *Grace,* 27 id. 503; *People* v. *Feitner,* 168 N. Y. 494; *County of Ramsey* v. *Church of Good Shepherd, supra; St. Joseph's Church* v. *Assessors,* 12 R. I. 19; *Gerke* v. *Purcell,* 25 Ohio St. 229; *Watterson* v. *Halliday,* 77 id. 150; *Vail* v. *Beach,* 10 Kan. 214.) The case of *Vail* v. *Beach, supra,* is very nearly in point. There the property exempted was such property as was "used exclusively for religious purposes," and the question then determined was, that a dwelling used by the pastor of the church as a home was not exempt from taxation; and in *County of Ramsey* v. *Church of Good Shepherd, supra,* it was held that a parsonage used by the pastor of the church as a home was not used for a religious purpose in a primary sense but for a secular purpose, and was not exempt from taxation. Those cases were cited and relied upon in *People* v. *First Congregational Church, supra.* This shows, we think, conclusively, that it was the view of the court at that time that the legislature was without power, under the constitution of 1870, to exempt from taxation a parsonage owned by a church organization and used by its pastor as a home. The cases of *Watterson* v. *Halliday, supra, County of Hennepin* v. *Grace, supra,* and *People* v. *Feitner, supra,* clearly establish the proposition that the fact that a parsonage is used by a minister who devotes himself entirely to the services of God and to works of religion and charity, whereby the interests of his church are subserved, does not convert the parsonage from a secular into a religious use.

From a careful examination of this record we have reached the conclusion that the parsonage of the appellant is not used exclusively for religious purposes, but is, under the authorities and under the evidence, devoted principally and primarily to secular purposes, and that the board of review did not err in holding that it was subject to taxation.

The decision of the board of review of DeKalb county will therefore be approved.      *Decision approved.*

Mr. JUSTICE FARMER dissenting:

I am unable to agree to the opinion of the court in this case. It seems to me the constitution is broad enough to authorize the exemption of such church property as is sought to be taxed in this case. It is very evident from the legislation upon this subject that the legislature intended to exempt church parsonages. When it was held the act of 1872 was not as broad as the constitution and only exempted property exclusively used for "public worship," it was sought to remedy the defect by the act of 1905. But that act failed to follow the constitution. In addition to exempting property used exclusively for "public worship" it went beyond the power conferred by the constitution and purported to exempt property that might not come within the designation of property used exclusively for "religious purposes." The present act, so far as it applies to church property, is free from any constitutional objection, and whether it embraces property of the character here sought to be taxed is before us for the first time. We were not called upon in *People* v. *First Congregational Church,* 232 Ill. 158, to determine what property would be embraced under the language of the constitution authorizing the legislature, by general law, to exempt property used exclusively for "religious purposes," as the statute then before the court did not contain the language. Of course, the parsonage would not be exempt, under the statute then before the court, as property used exclusively for "religious worship," but its exemption was claimed under the clause exempting "parsonages or residences actually and exclusively used by persons devoting their entire time to church work."

Section 3 of article 9 of the constitution authorizes the exemption, by general law, of all property used exclusively for school purposes. Pursuant to the constitutional power the legislature passed an act exempting "all property of institutions of learning, including the real estate on which

the institutions are located, not leased by such institutions, or otherwise used with a view to profit." The case of *Monticello Seminary* v. *People,* 106 Ill. 398, arose under that statute. The institution was originally located upon an eight-acre tract of land. Afterwards it became the owner of about seventy-five acres more land, part of which was used for raising vegetables and fruit for use by the institution, part for raising hay, corn and oats to feed cows and horses kept by the school and part of it for pasture for the stock. This land was assessed for taxation by the tax authorities and the institution claimed it was exempt under the statute. This court sustained that claim, and said (p. 400) : "The evidence further shows that all this property is necessary for the proper carrying on of the institution; that said tracts of land are used exclusively for the purposes of the institution, and that no part of the same has been leased or otherwise used with a view to profit; that it is necessary, in connection with the institution, to have cows to supply milk for the scholars and teachers, all of whom, numbering about 175 persons, reside and live within and upon the grounds of the institution; that horses are required to do the necessary hauling connected with the seminary, and that all the hay, corn and oats raised on the place go to the feeding of the stock thereon; that nothing is ever sold off the premises, and that what is raised is but a partial supply for the institution; that the object of the institution is, as far as possible, to make it a self-sustaining one, and that what is realized over and above actual expenses is used as a fund for the education of indigent females." If that land was held and "used exclusively for the purposes of the institution," and the facts brought the case, as said by the court, "within the very words of the exemption from taxation of the constitution and the legislation upon the subject," I am unable to see why the facts in this case do not bring it within the exemption of the constitution and the legis-

lation upon the subject. If land devoted to raising vege-
tables and fruit for use by the teachers and students and
grain and hay for live stock owned by the institution is,
within the meaning of the constitution, used exclusively for
school purposes, it would seem a church parsonage owned
and used as shown by the record in this case, is used ex-
clusively for religious purposes. The *Monticello Seminary
case* has never been overruled but has been frequently cited
in subsequent cases.

In *Monticello Seminary* v. *Board of Review,* 249 Ill.
481, the school was assessed on credits. It was the owner
of interest-bearing securities amounting to $127,411.71 and
claimed it was all exempt from taxation. Of that amount
$35,000 was donations or endowment funds to be loaned
and the income used in providing and maintaining scholar-
ships in the school. The principal was not to be used. The
rest of the fund ($92,411.71) was derived from tuition,
board and other income of the institution. This court held
that the $35,000 was exempt but that the other credits were
subject to taxation, although three members of the court
dissented and stated that in their opinion all of the credits
were exempt.

It does not require a resort to the rule of liberal con-
struction to hold that property acquired, owned and used
as is this property, is used exclusively for religious pur-
poses within the meaning of the constitution and statute.
The exemption authorized by the constitution is not re-
stricted to property used exclusively for public worship,
but embraces all property exclusively,—that is, primarily,—
used for religious purposes. A church building for pub-
lic worship is essential to the successful carrying out of the
work of the church, and a pastor or priest is also neces-
sary for efficient work. The pastor or priest is a man who
feels himself called of God to devote his time, energies and
talents to the work of his church and the persuading of
men and women to accept religion and lead pure and holy

lives. No church, society or congregation builds a church for other than a religious purpose. A purpose is "the idea or ideal kept before the mind as an end of effort or action." The purpose of building church houses is to promote the cause of religion, and this requires the services of a pastor or minister. As he is usually a man who devotes all his time to the work of the church and has no income except such as is paid by his congregation, it is customary to provide a place for him to live. Sometimes such provision is made a part of or connected with the church building, and sometimes, as in the case before us, a house is built on a lot adjoining the church lot. But wherever the building in which the pastor is to live is located, it is a part of the plan of the congregation to benefit mankind by preaching and teaching religion. The idea before the mind in furnishing the pastor a house is to make efficient the religious work and purpose of the church. The use to which the property is devoted, as well as its ownership, must be considered in determining whether it is exempt from taxation. If the primary object and purpose of the building is religious, its character as property exclusively used for religious purposes would not be destroyed by the fact that some uses made of it are not of a religious character. In *People* v. *First Congregational Church, supra,* it was said when a building is used primarily for religious purposes and secondarily for a secular purpose, or if there should be in a church building some room used as a lodging room by the sexton or some other person employed by the church, the building would not thereby lose its character as a building used for religious purposes. The evidence in this case is that the work of the church cannot be carried on efficiently without the constant care and attention of the pastor. The parsonage was paid for with contributions made by the church congregation. It was erected for the benefit it would be in promoting the work of the church and not for the benefit of the pastor. There is nothing in the con-

stitution or statute which limits church property that may be exempted from taxation to that necessarily used for public worship. The limitation is to property exclusively or primarily provided and used for religious purposes.

In my opinion the board of review erred in deciding the property was not exempt and in ordering it taxed.

CARTER, C. J., and VICKERS, J.: We concur in the foregoing dissenting opinion of Mr. Justice Farmer.