(Nos. 56867, 56878 cons.—

KURT McKENZIE, Appellee and Cross-Appellant, v. J. THOMAS JOHNSON, Director of Revenue, *et al.,* Appellants and Cross-Appellees (Holy Cross Roman Catholic Congregation of Champaign *et al.,* Intervenors, Appellees, and Cross-Appellants).

*Opinion filed October 21, 1983.*

88

90

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant and cross-appellee J. Thomas Johnson.

Thomas J. Difanis, State's Attorney, of Urbana

(Trisha Crowley, Assistant State's Attorney, of counsel), for appellants and cross-appellees Gerrie Parr *et al.*

James Kuehl, of Merriman, Finch & Kuehl, of Urbana (Kurt McKenzie, of counsel), for appellee and cross-appellant Kurt McKenzie.

Jerome J. Bromiel, of Webber & Thies, P.C., of Urbana (Bartley, Fraser, Parkhurst & Hession, of Peoria, and Reuben & Proctor, of Chicago, of counsel), for intervenors, appellees, and cross-appellants Holy Cross Roman Catholic Congregation *et al.*

JUSTICE SIMON delivered the opinion of the court:

Here we consider the facial constitutionality of legislation granting property tax exemptions for parsonages, fraternity and sorority houses and homestead improvements.

Plaintiff, Kurt McKenzie (McKenzie), a property taxpayer in Champaign County, filed this action in the circuit court of that county seeking a judgment declaring the tax exemptions unconstitutional and an injunction prohibiting the defendants—J. Thomas Johnson, Director of Revenue (the Director), and three members of the Champaign County board of review (the Board)—from granting or approving these exemptions in prospective tax years. In the circuit court several parties representing Roman Catholic, Presbyterian and Methodist churches (the churches) were granted leave to intervene.

McKenzie alleged that, on their face, the statutes authorizing the fraternity, parsonage and homestead-improvement exemptions (Ill. Rev. Stat. 1981, ch. 120, pars. 500.1, 500.2, 500.23—2, 500.23—3) violate the provisions of the Illinois Constitution that limit the legislature's power to grant exemptions from general property taxation (Ill. Const. 1970, art. IX, secs. 4(a), 6). After the churches unsuccessfully argued against McKenzie's standing to bring an action challenging the parsonage

exemption, the circuit court granted the parties' motions for summary judgment. It held that the homestead-improvement exemptions were unconstitutional while the parsonage and fraternity exemptions were not.

The Director and the Board each filed direct appeals to this court (87 Ill. 2d R. 302(a)) seeking a reversal of the circuit court's holding with regard to the homestead-improvement exemptions. When McKenzie and the intervenors appealed the other issues to the appellate court, this court granted motions to allow a direct appeal of the other issues to this court and to consolidate these appeals. We hold that the plaintiff has standing to challenge the parsonage exemption and that the parsonage, fraternity and homestead-improvement exemptions are all valid under the Illinois Constitution.

## McKENZIE HAS STANDING TO CHALLENGE THE PARSONAGE EXEMPTION

"This court will not determine the constitutionality of the provisions of an act *** where the party urging the invalidity of such provisions is not in any way aggrieved by their operation." (*Liberty National Bank v. Collins* (1944), 388 Ill. 549, 559; *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 125.) The churches contend that McKenzie, as a taxpayer, has not alleged an interest in the controversy over the constitutionality of the parsonage exemption sufficient to confer standing upon him to raise that issue. We disagree.

Article IX, section 6, of the Constitution provides:

> "The General Assembly by law may exempt from taxation *only* the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits. (Emphasis added.) (Ill. Const. 1970, art. IX, sec. 6.)

By establishing the principle that property taxes will be levied against all property in the State except for property exclusively used for the purposes described, article IX, section 6, guarantees every real property owner in this State that the burdens of real property taxation will be evenly distributed among all owners of such property. See also Ill. Const. 1970, art. IX, sec. 4(a) ("taxes upon real property shall be levied uniformly").

McKenzie alleged that the granting or approval of parsonage exemptions "for property owned in Champaign County by persons other than the Plaintiff raises the amount of real property tax which Plaintiff must pay," an allegation which is admitted by the Board in its answer to the complaint. By bringing himself within the ambit of the specific guarantee set forth in article IX, section 6, and by claiming that his tax liability is generally affected by a statute which facially violates that guarantee, we believe that McKenzie has alleged a sufficient stake or interest in this controversy to confer standing upon him in this action. See generally *Standing of One Taxpayer to Complain of Underassessment or Nonassessment of Property of Another for State and Local Taxation*, Annot., 9 A.L.R.4th 428, 471-79 (1981).

The churches rely on authority holding that "there is no right in an individual taxpayer to bring a suit for the collection of taxes, but a suit having for its purpose such collection must be brought by the person or agency designated by statute for that purpose." (*People ex rel. Morse v. Chambliss* (1948), 399 Ill. 151, 158; see also *Hoffman v. Northwestern University* (1976), 40 Ill. App. 3d 1012, 1016.) These cases, however, differ from this action, for here the plaintiff seeks to enjoin public officials from enforcing a tax-exemption statute which allegedly is unconstitutional on its face. "[A]n unconstitutional exercise of the taxing *** power is intolerable in our system of government and *** the courts should be readily available to im-

mediately restrain such excesses of authority." (*Paul v. Blake* (Fla. App. 1979), 376 So. 2d 256, 259 (holding that taxpayer has standing to challenge the constitutionality of certain property tax exemptions but denying standing to raise other allegations of unlawfulness).) We reserve, however, the question of whether a taxpayer may bring an injunction action against public officials where the taxpayer alleges that the grant of an exemption for a *specific* parcel of property violates article IX, section 6.

### THE PARSONAGE EXEMPTION IS CONSTITUTIONAL

Section 19.2 of the Revenue Act of 1939 establishes a property tax exemption for "[a]ll property used exclusively for religious purposes *** and not leased or otherwise used with a view to profit, including all such property owned by churches or religious institutions or denominations and used in conjunction therewith as parsonages or other housing facilities provided for ministers *** their spouses, children and domestic employees, performing the duties of their vocation as ministers at such churches or religious institutions or for such religious denominations, and including the convents and monasteries where persons engaged in religious activities reside." (Ill. Rev. Stat. 1981, ch. 120, par. 500.2.) The language referring to parsonages was added in a 1957 amendment to the statute. (1957 Ill. Laws 614.) McKenzie contends that parsonages are ineligible for property tax exemptions because they are used primarily for residential purposes, and are not used *exclusively* for *religious* purposes as required by article IX, section 6, of the Constitution. Thus, he claims that the parsonage exemption contained in section 19.2 is unconstitutional.

Cases construing article IX, section 3, of the 1870 Constitution, which permitted property tax exemptions for "property *** used exclusively for *** religious *** purposes" (Ill. Const. 1870, art. IX, sec. 3), are relevant in construing the limits of exemptions under article IX, sec-

tion 6, of the present constitution. (*Small v. Pangle* (1975), 60 Ill. 2d 510, 514, *cert. denied* (1975), 423 U.S. 918, 46 L. Ed. 2d 245, 96 S. Ct. 257.) In arguing that the parsonage exemption contained in section 19.2 is unconstitutional, McKenzie relies on *People ex rel. Thompson v. First Congregational Church* (1907), 232 Ill. 158, where in holding that a property tax exemption for parsonages, enacted in 1905, was unconstitutional under article IX, section 3, of the 1870 Constitution the court observed:

> "The parsonage in this case was used as a home for the pastor and the members of his immediate family. So far as appears from this record, it was used as a family residence and nothing more. *** [T]here seems to be no ground upon which it can be successfully contended that it was used for a religious purpose ***. No doubt the pastor, in the performance of his duties, necessarily requires a place for meditation, study and prayer; but ordinary living rooms, used in common by all members of his household, would seem not well adapted for such purposes." 232 Ill. 158, 162-63.

The 1905 parsonage exemption declared unconstitutional in *People ex rel. Thompson v. First Congregational Church* authorized an exemption for "[a]ll church property *** exclusively used for public worship *and* all parsonages or residences *** used by persons devoting their entire time to church work." (Emphasis added.) (232 Ill. 158, 161.) That parsonage exemption is fundamentally different from the exemption provided by section 19.2, the statute involved in this case. In providing an exemption for parsonages whether or not they were used exclusively for religious purposes, the 1905 exemption violated the venerable principle that a property tax exemption created by "statute cannot be made broader than the provisions of the constitution and no property except that mentioned in [the exemption] section [of the Constitution] can be exempted by any law passed by the legislature." (*Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132, 137; *Consol-*

*idated Coal Co. v. Miller* (1908), 236 Ill. 149, 152.) In declaring the 1905 exemption unconstitutional this court embraced that principle, observing:

"Where a building is used primarily for religious purposes and secondarily for some secular purpose *** the building would not thereby lose its character as one used for religious purposes, but where the property is used primarily for a family residence by the pastor it cannot be held that it is used exclusively for religious purposes. *The legislature cannot, by its enactment, make that a religious purpose which in fact is not a religious purpose.*" (Emphasis added.) 232 Ill. 158, 164.

The language of the current parsonage exemption, on the other hand, refers to "all *such* property owned by churches or religious institutions *** and used *** as parsonages ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 500.2.) The word "such" refers to the preceding language which allows an exemption only for "property used exclusively for religious purposes." (Ill. Rev. Stat. 1981, ch. 120, par. 500.2.) The current parsonage exemption only lists parsonages to illustrate or describe one type of property that, under appropriate circumstances, may qualify for the general religious property exemption which tracks the language of article IX, section 6, of the Constitution. Unlike the 1905 parsonage exemption the current parsonage exemption is subject to the exclusive-religious-use requirements of the Constitution and does not unlawfully enlarge the area of allowable exemptions.

This interpretation of section 19.2 is consistent with this court's construction of similar exemption statutes. Section 19.7 of the Revenue Act of 1939, for example, allows a property tax exemption for "[a]ll property of institutions of public charity *** and all property of old people's homes." (Ill. Rev. Stat. 1981, ch. 120, par. 500.7.) In *Methodist Old People's Home v. Korzen* (1968), 39 Ill. 2d 149, 156, this court construed legislation defining "old people's homes" as "*including*" a home with specified characteris-

tics and held that it did not attempt to expand the charitable exemption beyond the limits of the Constitution:

"[W]e hold that the legislature did not intend to deviate from the constitutional requirement that to be exempt from taxation the property of an old peoples home must be used exclusively for charitable purposes. [The amendatory legislation] did nothing more than add language which was descriptive and illustrative of 'old people's homes.' " (39 Ill. 2d 149, 156.)

See also *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 100; *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 277 (language describing "property used exclusively for school purposes" as including faculty housing facilities "does not seek to enlarge the area of constitutionally allowable exemption").

McKenzie argues that the parsonage exemption is unconstitutional even if it requires that a parsonage be used exclusively for religious purposes before it is entitled to the exemption. In support of this proposition he relies on cases dating back to 1912 in which this court has denied every application that has come before it for a religious property tax exemption on specific parsonages or analogous church property, holding in each case that such property was not used exclusively for *religious* purposes as required by the language of the general religious exemption first enacted in 1909. See, *e.g.*, *First Congregational Church v. Board of Review* (1912), 254 Ill. 220 (parsonage); *Muldoon v. Board of Review* (1912), 254 Ill. 336 (parsonage); *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234 (monastery residence, support buildings and surrounding fields); *People ex rel. Pearsall v. Methodist Episcopal Church* (1924), 315 Ill. 233 (parsonage); *St. John Evangelical Lutheran Congregation v. Board of Appeals* (1934), 357 Ill. 69 (residence of instructor in parochial school).

In essence McKenzie argues that our cases hold that a parsonage, by its very nature, can never be used exclu-

sively for religious purposes because in every case its residential character must predominate over any other religious uses of the property. (*Cf. People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 239 ("it is settled that [a parsonage] is not exempt").) Under this view the language referring to parsonages was added by the legislature to section 19—2 solely to encourage public officials to approve exemptions for parsonages, which exemptions, McKenzie claims, would violate the Constitution as it is interpreted by this court.

This court has long held that property satisfies the exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose; "if property is devoted, in a primary sense, to a religious purpose, the fact that it is incidentally used for secular purposes will not destroy the exemption ***." (*First Congregational Church v. Board of Review* (1912), 254 Ill. 220, 224.) In *First Congregational Church v. Board of Review*, however, the parsonage was denied an exemption even though it was used extensively for religious services and instruction and for the pastor's offices. Three justices filed a lengthy dissent in that case observing:

> "A church building for public worship is essential to the successful carrying out of the work of the church, and a pastor or priest is also necessary for efficient work. *** The evidence in this case is that the work of the church cannot be carried on efficiently without the constant care and attention of the pastor. The parsonage was paid for with contributions made by the church congregation. It was erected for the benefit it would be in promoting the work of the church and not for the benefit of the pastor. There is nothing in the constitution or statute which limits church property that may be exempted from taxation to that necessarily used for public worship. The limitation is to property exclusively or primarily provided and used for religious purposes." 254 Ill. 220, 229-31 (Farmer, J., Carter, C.J., and Vickers, J., dissenting).

The extremely narrow construction of primary religious

use, embraced by the cited cases, is out of step with more recent Illinois authority on tax exemptions, and these cases do not establish that parsonages may never be used exclusively—that is primarily—for religious purposes. For example, in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, this court held that an exemption of school property "will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of educational objectives, or efficient administration, of the particular institution." (38 Ill. 2d 272, 278; see also *Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132, 139-42.) In *MacMurray College*, this court held that faculty and staff residences were not reasonably necessary for carrying out the school's educational purposes because it was not established that "any of the faculty or staff members *** were required, because of their educational duties, to live in these residences, or that they were required to or did perform any of their professional duties there." 38 Ill. 2d 272, 279.

Under the *MacMurray* standard a parsonage qualifies for an exemption if it reasonably and substantially facilitates the aims of religious worship or religious instruction because the pastor's religious duties require him to live in close proximity to the church or because the parsonage has unique facilities for religious worship and instruction or is primarily used for such purposes. Given that residence facilities have, on occasion, qualified for exemption from taxation under the school exemption (see *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 368 (student dormitories on university campus); *Monticello Female Seminary v. People* (1883), 106 Ill. 398, 400 (house occupied by superintendent of grounds at seminary); *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 13-14 (gardener's residence, archbishop's summer home and a student dormitory at seminary); *People ex rel. Hes-*

*terman v. North Central College* (1929), 336 Ill. 263, 266 (student dormitories at college)), we cannot say that a parsonage could never qualify for exemption as property used exclusively for religious purposes solely because it is also used for residential purposes. (See generally *Taxation: Exemption of Parsonage or Residence of Minister, Priest, Rabbi or Other Church Personnel*, Annot., 55 A.L.R.3d 356, 378-79 (1974).) Whether a particular parsonage may be entitled to exemption turns on the evidence showing how the parsonage is being used, but the language exempting parsonages in section 19.2 is not unconstitutional on its face.

### THE FRATERNITY AND SORORITY EXEMPTION IS CONSTITUTIONAL

Section 19.1 of the Revenue Act of 1939 provides an exemption for property used exclusively for school purposes:

> "All *** property of schools *** used by such schools exclusively for school purposes, *** including, but not limited to, student residence halls, dormitories and other housing facilities for students and their spouses and children, and staff housing facilities ***. *The Occupancy, in whole or in part, of a school-owned and operated dormitory or residence hall by students who belong to one or more fraternities, sororities, or other campus organizations shall not defeat the exemption for such property under the terms of this Section.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 500.1.)

The last sentence was added by a 1967 amendment to section 19.1. (1967 Ill. Laws 1977.) McKenzie contends that the language referring to fraternities in section 19.1 is unconstitutional under article IX, section 6, of the Constitution because it authorizes an exemption for property that is not used exclusively for school purposes.

This court rejected a similar argument in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 276-77. That case

required consideration of an amendment which added the language in section 19.1 describing property used exclusively for school purposes as "including, but not limited to, student residence halls, dormitories and other housing facilities for students and their spouses and children, and staff housing facilities ***." (Ill. Rev. Stat. 1965, ch. 120, par. 500.1.) The court held that this amendment did not attempt to expand the availability of the exemption for school property beyond the limits of article IX, section 3, of the 1870 Constitution:

> "We deem that the legislature did not intend to alter the requirement that school property, including staff housing facilities, in order to be exempted from tax must in fact be used exclusively for school purposes. The legislature when it said 'including, but not limited to, student residence halls, dormitories and other housing facilities for students and their spouses and children, and staff housing facilities' was speaking descriptively and illustratively and not with a declaratory intendment. The statute does not seek to enlarge the area of constitutionally allowable exemption." 38 Ill. 2d 272, 277.

Although this is, perhaps, a closer case than *MacMurray College*, we believe that the legislature's addition of the sentence referring to fraternities was merely a description or illustration of another type of property that might qualify, under appropriate circumstances, as property used exclusively for school purposes. Like the statute in *MacMurray College* this statute is not unconstitutional on its face.

McKenzie relies on *Knox College v. Board of Review* (1923), 308 Ill. 160, for the proposition that fraternities and sororities are exclusive social organizations which can never be used "exclusively for school purposes." In that case, however, a property tax exemption was denied only for a specific fraternity house:

> "The fraternity houses *here in question,* however, are not shown *by the evidence* to be buildings created for the indiscriminate use of all the students, but are, *as we understand the record,* open only to the members of the respec-

tive fraternities, not by virtue of their college attendance but only upon election to membership in such fraternities under rules established by the societies themselves." (Emphasis added.) (308 Ill. 160, 166.)

Given that in appropriate circumstances this court has upheld property tax exemptions for a campus union (see, *e.g., People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 373; *cf. City of Chicago v. University of Chicago* (1907), 228 Ill. 605, 608-09 (remission of water rates allowed where held that union used for educational purposes)) and for campus dormitories (see, *e.g., People ex rel. Hesterman v. North Central College* (1929), 336 Ill. 263, 266), we cannot say that school-owned fraternity houses *per se* may never qualify for a property tax exemption as property used exclusively for school purposes. The availability of the exemption depends on questions of fact such as how students become eligible to use the facility, and no such evidence has been presented in this facial challenge to the statute. For that reason, we hold that the language in section 19.1 referring to fraternities and sororities is not unconstitutional on its face.

## THE HOMESTEAD IMPROVEMENT EXEMPTIONS ARE CONSTITUTIONAL

Section 19.23—2 of the Revenue Act of 1939 establishes a homestead-improvement exemption in counties with less than one million inhabitants:

"In counties with less than 1,000,000 inhabitants, a homestead improvement exemption pursuant to Article IX, Section 6 of the 1970 Constitution limited to an annual maximum of $25,000 in actual value when that property is owned and used exclusively for a residential purpose upon demonstration that a proposed increase in assessed value is attributable solely to a new improvement of an existing structure. The amount of the exemption shall be limited to the actual value added by the new improvement up to an annual maximum of $25,000 and shall continue for 4 years from the date the improvement

is completed and occupied, or until the next following quadrennial assessment of such property, whichever is later." (Ill. Rev. Stat. 1981, ch. 120, par. 500.23—2.)

In essentially identical language, section 19.23—3 establishes the same exemption in counties with one million or more inhabitants. (Ill. Rev. Stat. 1981, ch. 120, par. 500.23—3.) The legislature added these sections to the Revenue Act in two 1975 acts. (Pub. Act 79—630 and Pub. Act 79—913, 1975 Ill. Laws 2000, 2785.) The circuit court in this case held that these homestead-improvement exemptions are unconstitutional because they do not qualify as "homestead exemptions" authorized by the language of article IX, section 6, which states: "The General Assembly by law may grant homestead exemptions or rent credits." Ill. Const. (1970), art. IX, sec. 6.

The circuit court relied in part on *Proviso Township High School District No. 209 v. Hynes* (1980), 84 Ill. 2d 229, which dealt with a homestead-improvement exemption that permitted an exemption of up to $15,000 in actual value of improvements per dwelling unit on real property containing less than 55 units "and which is owned and used primarily for a residential purpose by *either the owner or other persons who rent or lease such property or portions thereof.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 500.23—4.) The exemption in that case was held unconstitutional because it did "not require that the owner be a natural person who resides in the building" to be eligible for the homestead-improvement exemption. 84 Ill. 2d 229, 243.

It has often been said that "it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." (*Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561, *cert. denied* (1967), 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75; see also *Follett's Illinois Book & Supply*

*Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 604; *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 277.) The circuit court held, on the authority of *Proviso Township,* that no reasonable interpretation of sections 19.23—2 and 19.23—3 could supply the necessary ingredient for a valid homestead exemption—that the owner be a natural person who resides in the improved dwelling. We disagree.

The statute declared unconstitutional in *Proviso Township* could not possibly have been construed as complying with the limits of article IX, section 6, because it specifically authorized a home-improvement exemption for improved property which was occupied by lessors or renters of the owner. The present statute, on the other hand, only authorizes the homestead-improvement exemption if the property *"is owned and used exclusively for a residential purpose."* (Emphasis added.) Ill. Rev. Stat. 1981, ch. 120, pars. 500.23—2, 500.23—3.

In opinion No. S—1045 the Attorney General has interpreted this language to limit the homestead-improvement exemption to property that is occupied by the owner and used exclusively *by him* for residential purposes: "Since all property is, in fact, owned by someone, any other construction would render the word 'owned' meaningless." (1976 Ill. Att'y Gen. Op. 85.) In this opinion the Attorney General also observed that the homestead-improvement exemption is unavailable on an apartment building where the owner leases some units to lessees who use the units only for residential purposes. The exemption does not apply in such cases because the building is not *owned* exclusively for residential purposes as required by the statute; although the lessees may use their units for residential purposes, they do not own them, and even though the owner resides in the building, he also uses it for commercial purposes. (1976 Ill. Att'y Gen. Op. 85.) Although not controlling, this interpretation of the statute is entitled to deference (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117,

130-31), and we choose to adopt it here where it reasonably interprets the statutory language and thereby gives it a construction which is consistent with the Constitution. This interpretation is also consistent with the construction that the Board has placed on the statute as related in the affidavits of the defendant Board members which were submitted with their motion for summary judgment.

Finally, we also hold that sections 19.23—2 and 19—23—3 require that the owner of the property be a natural person, for only such persons can *own and occupy* the property for a *residential* purpose. (See *Proviso Township High School District 209 v. Hynes* (1980), 84 Ill. 2d 229, 240-41.) Corporations or other entities which rent housing units or which conduct business or professional affairs from them would be using the properties for business and commercial purposes and not for residential purposes. *Cf. N.H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 26-27 (use of property as doctor's office violates covenant restricting use to residential purposes).

The circuit court, however, relied upon an additional and independent ground in declaring sections 19.23—2 and 19.23—3 unconstitutional. It held that while article IX, section 6, of the Constitution authorizes "homestead exemptions" it does not authorize homestead-*improvement* exemptions.

The language in article IX, section 6, of the 1970 Constitution that permits homestead exemptions was adopted by the constitutional convention essentially in the form that was recommended by the Committee on Revenue and Finance. In its report the committee described the provision in some detail:

> "The final sentence permitting the granting of homestead exemptions or rent credits represents a major change. The Committee is acutely aware of the hardships which the payment of property taxes on residential property can cause—especially when the homeowner, by reason of retirement or a change in family circumstance, has

a greatly reduced income.

Many States have moved to meet this problem by providing for the exemption from taxation of the assessed value of owner-occupied homes. In some cases, the exemptions are available to all those who occupy a homestead. In other cases, benefits are limited to those who are elderly or in need. Unfortunately, this kind of exemption provides no relief to renters who directly pay no real estate taxes but whose rent payments are higher by reason of property taxes paid by the owners of property which they occupy. The Committee proposal will permit the General Assembly to develop a system whereby credits for real estate tax payments are passed through to the renter so that he may receive a benefit comparable to the homeowner.

The Committee considered adding language which would limit the homestead exemptions to those who are elderly and/or needy. *Although many members of the Committee felt that benefits should be limited in this way, it was deemed wiser not to write the limitations into the constitution.*" (Emphasis added.) 7 Proceedings of the Sixth Constitutional Convention 2158-59 (hereafter referred to as Proceedings).

A dissent to the report argued that homestead exemptions should be limited to property owned and occupied by elderly persons with limited means. (7 Proceedings 2160-63 ("Under the Committee proposal the entire assessed value of all homesteads in Illinois could be exempted").)

An amendment to the committee's proposal was offered on the floor of the convention which would have limited homestead exemptions "to the elderly on limited means," and some delegates expressed a preference for this more limited type of homestead preference. (3 Proceedings 2080-81.) Delegate Karns opposed the limiting amendment stating:

"I think in 1870 when our present constitution was adopted and did not provide for a homestead exemption, it was not contemplated that the—the heavy burden of taxation on residential real estate. *The language does not*

*require or mandate any particular form of exemption but is a rather broad grant of power to the General Assembly to devise an equitable system of exemptions [and] rent credits.*

I would point out to the Convention that when you limit the credit to the elderly needy, there are many, many people in our society today that are *not* elderly but *are* needy. I submit that the General Assembly might want to provide some relief to widows, regardless of age, with families.

This provision is a flexible one, and I think in a day and age where the burden of taxation is so great on residential real estate, it should be in the constitution granting this power to the General Assembly.

There are disabled people. We heard much testimony from various groups—blinded veterans and so forth. They are not necessarily elderly, but many are needy.

*I suggest that this is an area where we should make a broad grant of authority to the General Assembly to deal with this problem."* (Emphasis added.) (3 Proceedings 2080-81; see also 3 Proceedings 1919-20 (remarks of Delegate Scott).)

The convention rejected the limiting amendment, leaving the legislature with the broad powers provided in the Committee's draft. 3 Proceedings 2082.

We believe that the homeowner's improvement exemptions provided in sections 19.23—2 and 19.23—3 are valid homestead exemptions under article IX, section 6, of the 1970 Constitution. At the very least article IX, section 6, authorizes the legislature to grant exemptions to specific classes of needy homeowners who are "threatened with the loss of their residence through high property taxes." (*Proviso Township High School District 209 v. Hynes* (1980), 84 Ill. 2d 229, 240.) The homestead-improvement exemption authorizes an exemption of a portion of the assessed value of a homestead, specifically the value up to $25,000 per year which is added to the home by an *improvement.* The legislature may have concluded that homeowners who add a substantial improvement to their homes

may often incur debt to do so, and that such homeowners should be granted an exemption for the value added by the improvement for the limited period of four years in order to give them an opportunity to make a substantial beginning toward paying off their improvement loans.

The debates of the convention, however, also indicate that it was the intention of the delegates by adopting article IX, section 6, to grant the legislature broad powers to fashion homestead exemptions that would promote other legitimate social policies as well, such as rewarding the patriotic service of veterans "who have been obliged to drop their own affairs to take up the burdens of the nation." (*Boone v. Lightner* (1943), 319 U.S. 561, 575, 87 L. Ed. 1587, 1596, 63 S. Ct. 1223, 1231.) The legislature might have assumed that by encouraging the improvement of existing housing units, the homestead-improvement exemption would advance conservation, promote jobs, and add to the value of the local property tax base. Thus, we hold that homestead *improvement* exemptions are permissible "homestead exemptions" authorized by article IX, section 6, of the Constitution.

### CONCLUSION

The judgment of the circuit court is affirmed to the extent that it held the parsonage and fraternity exemptions constitutional and reversed to the extent that it held the homestead-improvement exemption unconstitutional.

*Affirmed in part and*
*reversed in part.*