KNOX COLLEGE, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Third District   No. 3—87—0372

Opinion filed May 16, 1988.

Nelson, Gustafson & Blake, of Galesburg (Jack P. Ball, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Richard Merrill, Jr., Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Knox College appeals from an order of the circuit court of Knox County affirming the decision of the Illinois Department of Revenue to deny tax exemptions to seven parcels of real estate owned by Knox College. Five of the parcels are leased to fraternities, and two of the parcels are vacant lots.

The college applied for property tax exemptions for these parcels for the year 1985, and the Knox County Board of Review granted the exemptions as requested. The Illinois Department of Revenue reversed the board of review and denied the exemptions. Thereafter, a formal administrative hearing was held after which the administrative law judge held that the college had failed to establish that the fraternity houses were actually used exclusively for educational purposes. He denied exemptions as to the five houses and as to one vacant lot, but as to the other lot, he approved the exemption. The college then obtained judicial review of that decision, and the circuit court of Knox County affirmed the decision of the Department of Revenue. This appeal followed.

■■ Looking first at the fraternity property, three of the fraternities signed 99-year leases with the college in 1920. Another leased its house in 1968, and another in 1981. The original leases each provided that the house is "to be used and occupied as a dormitory by the men students who may from time to time be the active members of [the] local chapter." Later leases merely indicated that each house was to be used "as a fraternity house." In each case the college provides maintenance and repairs, funds any capital improvements, and provides insurance. College regulations require residents of the fraternities to be regularly enrolled college students and require that pledging memberships be open to all students regardless of race, creed, or color.

Students who live in the fraternities must eat at the college dining hall and pay the same room rate as residents of campus dormitories. In fact, the college collects the room rent from fraternity residents and closely monitors the house budgets of the fraternities. At the administrative hearing, the dean of students of the college testified that students who are not members of the fraternities have lived in the fraternity houses and that the college would place nonmembers in the fraternities if there was a need and space available. The dean also testified that the college believes fraternities benefit the educational program of the college by providing leadership training and experience, by developing social and group relationships, and by achiev-

ing ongoing contact with alumni of the chapter.

The administrative law judge filed a decision following the administrative hearing. Included in his findings of fact were the following:

> "Five of said seven parcels and the buildings thereon, I find, while owned by Applicant, were leased to fraternities which occupied said buildings during 1985, and controlled who lived in said houses. With one exception during 1985, the residents were either pledges or members of the respective fraternities. Said houses then, during 1985, were only open to the members of the fraternities pursuant to the rules of said fraternities. Consequently, I find that said houses were not used primarily for educational purposes during 1985."

Following judicial review, the circuit court held that the decision of the Department of Revenue was not against the manifest weight of the evidence and was not contrary to law.

Administrative agency findings on questions of fact are *prima facie* true and correct (Ill. Rev. Stat. 1985, ch. 110, par. 3—110) and should not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*Burke v. Board of Review* (1985) 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) The standard for judicial review is as follows:

> "Courts will not reweigh the evidence adduced at an agency hearing; their review is restricted to making an assessment of whether the agency's final decision was just and reasonable in light of the evidence presented. [Citation.] Where a conclusion opposite to that of the agency's is 'clearly evident' from the evidence, a court must overturn the agency's factual finding. [Citations.]" *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 457 N.E.2d 512.

Article IX, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §6), authorizes the General Assembly to exempt from taxation property used exclusively for school purposes. Section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 500.1) sets forth that exemption in part as follows:

> "[A]ll property of schools *** used by such schools exclusively for school purposes, not leased by such schools or otherwise used with a view to profit, including, but not limited to, student residence halls, dormitories and other housing facilities for students and their spouses and children, and staff housing facilities ***. The occupancy, in whole or in part, of a school-owned and operated dormitory or residence hall by students who belong to one or more fraternities, sororities, or other campus or-

ganizations shall not defeat the exemption for such property under the terms of this Section." .

The last sentence was added by amendment in 1967, and its constitutionality was upheld in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 456 N.E.2d 73, where the supreme court set forth the time-honored principle that a property tax exemption created by statute cannot be broader than the constitutional provision for exemptions. Thus, a school-owned residence hall occupied by members of a fraternity must meet the constitutional requirement that the property be used exclusively for school purposes before the exemption would be allowed. The legislature's addition of the sentence referring to fraternities was held to be "merely a description or illustration of another type of property that might qualify, under appropriate circumstances, as property used exclusively for school purposes." (98 Ill. 2d at 101.) The court also stated, "The availability of the exemption depends on questions of fact such as how students become eligible to use the facility ***." 98 Ill. 2d at 102.

The Illinois Supreme Court has repeatedly held that dormitories and dining halls used exclusively by students are an essential part of universities and colleges and are devoted to the educational purposes of such institutions. (*E.g., People ex rel. Hesterman v. North Central College* (1929), 336 Ill. 263, 168 N.E. 269.) In a definitive decision, *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 58 N.E.2d 33, the supreme court restated the "primary use rule": that it is the primary use to which the property is devoted, and not its secondary or incidental use, that is controlling. (See *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 142 N.E. 520.) The court in *Goodman* was considering a tax exemption for the Illini Union building and other buildings. The exemption of the union building was approved after the following analysis:

"Club buildings used by students and alumni, although nominal dues are paid, as here, are used 'in the immediate carrying on of the educational purposes of the university' when the payments are insufficient to 'pay for the maintenance of the club.' City of Chicago v. University of Chicago, 228 Ill. 605[, 81 N.E. 1138, 10 Ann. Cas. 669]. The Union Building is essentially in the nature of a club where dues or fees are paid. As well said in Elder v. Trustees of Atlanta University, 194 Ga. 716,[ 22 S.E.2d 515, 519, 143 A.L.R. 268,] 'It may be that a college could operate without *** dormitories, *** but this would not prove that *** dormitories *** erected for and used by the authorities as a part of the equipment of the institution was [*sic*]

not a part of the college and therefore was [sic] subject to taxation. *** Some discretion must be given to the governing authorities of the institution to determine what buildings are necessary or proper to further their educational objectives.' " *People ex rel. Goodman v. University of Illinois Foundation,* 388 Ill. at 373, 58 N.E.2d at 38.

These decisions make clear that college-owned buildings used as student residences, dormitories, and clubs can be tax exempt as property used primarily for school purposes, at least upon a showing that such uses are considered by the governing authorities to be necessary to carrying out the educational purposes of the college. The testimony of the Knox College officials in the record here is uncontradicted that these five fraternities are considered a necessary part of the college housing system and are of value in carrying out the educational objectives of the college.

The Department of Revenue would place fraternity residences in a different category than other student residence halls and dormitories. The decision of the administrative law judge stated, "Since the fraternities are secret socieites [sic], this would appear to preclude persons who are not pledges or members, from living there." This finding is not supported by any evidence. The record does not contain the rules of the fraternities or any testimony to the effect that nonmembers are not allowed to reside in a fraternity. In fact, during 1985 one student did live in a fraternity house without being a pledge or member, and the testimony of the witnesses indicated that the college would place students in fraternities if necessary.

The position adopted by the Department is based upon *Knox College v. Board of Review* (1923), 308 Ill. 160, 139 N.E. 56, where the fraternities at Knox College were held not tax exempt because the record indicated that the fraternities were not open to all students and were not created for the indiscriminate use of all students. This somewhat narrow basis for determining an exemption was expanded by the 1967 amendment to the Revenue Code stating that occupancy of college property by a fraternity shall not defeat a tax exemption. Thus, an exemption should be granted where fraternities can be shown to be a part of the educational program of the college. In holding that amendment constitutional, the supreme court in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 456 N.E.2d 73, made clear that student eligibility for use of fraternity residences was also one of the facts to be considered in granting eligibility. In the instant case, unlike the 1923 case, the testimony is undisputed that the fraternities on the Knox College campus must be open to all students without regard to

race, creed, or color. That is sufficient to meet the test of *McKenzie v. Johnson.*

We note from the record that Knox College has an "International House." Many campuses have a residence where students from other nations can live together. The housing of students in such intentional groups does not invalidate the tax-exempt status of the residential property so long as the other tests are met as they are here.

The finding by the Department that the fraternity houses were not used primarily for educational purposes during 1985 was contrary to the manifest weight of the evidence, and the circuit court of Knox County erred in affirming that ruling.

The final issue concerns the vacant lot which the Department found was not tax exempt. The Department relies upon the case of *Antioch Missionary Baptist Church v. Rosewell* (1983), 119 Ill. App. 3d 981, 457 N.E.2d 500, for the proposition that a vacant lot cannot qualify for a tax exemption. In *Antioch* a building owned by a church was vacant and boarded up for four years. The court held that intention to use the property for a church was not the equivalent of using it and, therefore, that the property was not exempt for the years of nonuse.

The only testimony in the record concerning the use of parcel No. 99—15—207—004 is that it is used by students for recreation, such as flying kites, but that it has no specific college use other than "general campus usage." We believe that open spaces serving as a campus lawn are an integral part of a college campus. The fact that one lot in this case is used by students as a walkway and the other is used recreationally is not a significant distinction. The vacant lot here, unlike the unused property in *Antioch*, was a part of a regular college operation and was surrounded by exempt properties. We conclude that this vacant lot is not the kind of unused property which fails to qualify for exemption. The Department and the trial court erred as a matter of law in denying tax-exempt status to this parcel.

The judgment of the circuit court of Knox County is reversed, and this cause is remanded with directions to enter an order granting the application of Knox College for tax exemptions for the college property as indicated herein.

Reversed and remanded with directions.

STOUDER and SCOTT, JJ., concur.